HAMILTON, Appellee,

v.

HAMILTON, Appellant.

[Cite as *Hamilton v. Hamilton* (1995), 107 Ohio App.3d 132.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–292.

Decided Oct. 27, 1995.

*John L. Straub,* for appellee.

*Henry B. Herschel,* for appellant.

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which granted appellee's motion for modification of child support. Appellant, John A. Hamilton, appeals that judgment and asserts the following assignments of error:

"I. The court erred when it ordered the appellant to exercise his visitation and companionship rights.

"II. The trial court erred when it determined that the date of effect for the modification of child support was September 8, 1992.

"III. The trial court erred in its calculation of the amount of ordered child support."

Appellant and appellee, Diane J. Hamilton, were divorced in April 1987. Pursuant to a separation agreement incorporated into the decree, appellee was awarded custody of the parties' minor children, Mark, born August 28, 1978, and Susan, born October 18, 1980. Appellant was ordered to pay child support in the amount of $315.69 every two weeks and allowed reasonable visitation rights with his children.

On September 8, 1992, appellee filed a motion for modification of the child support amount. Appellee alleged that because appellant failed to fully exercise visitation with Susan, a multihandicapped child, she was unable "to secure any free time for herself except for six and one-half (6½) hours on Sundays or any free weekends for herself without hiring an appropriate custodian." Appellee requested, among other things, a deviation from the child support guidelines in the amount of $400 per month "for the reason that the plaintiff is assuming both temporal and financial obligations for the handicapped child." She also asked for attorney fees and costs.

Appellant subsequently filed a motion asking the court to, *inter alia*, reduce the child support award because the sum included for work-related child care expenses was no longer necessary.

Hearings on the parties' motions were held before a referee in September, November and December 1993 and in July 1994. The following pertinent facts were adduced at these hearings.

Susan is a multihandicapped child, born with Angelman's Syndrome. The characteristics of the syndrome include mental retardation and a form of cerebral palsy. In addition, Susan has a seizure disorder, vision problems, asthma and curvature of the spine. It is undisputed that, due to her physical and mental conditions, Susan cannot walk or sit in an upright position without assistance. She must receive twenty-four-hour care that entails feeding her, dressing her and helping her use the bathroom and making sure she receives her medications. At the time of the hearings, Susan was about five feet tall and weighed approximately one hundred pounds.

Appellee is a teacher. She helps Susan get ready for school during the week and aids her in getting to the ambulette that transports Susan to school. On weekdays, Pat Reckel arrives at appellee's residence at 3:00 p.m. and cares for Susan until appellee arrives home. She also cares for Susan when she misses school due to illness or vacation. Reckel is paid $15 per day irrespective of the number of hours she is required to take care of Susan. On Saturdays, Susan attends a day program at the Sunshine Children's home. On Sunday, appellant

generally picks Susan up at 10:30 a.m. and takes her home at varying times, usually 6:00 p.m. Susan also participates in programs offered by the Sunshine Children's Home during the summer. A portion of the cost for these programs and for additional respite care is paid through a government grant.

Appellee testified that the Sunday visitations were set up so that she and Mark could attend church together. She also admitted that appellant notified her of the times (approximately five or six) that he could not visit with Susan and that, in some instances, he "made up" the missed visitation. She further stated that appellant visited with Susan on days in addition to Sundays. Nevertheless, appellee stated that since her back surgeries in 1992 and 1993, she felt less able to care for Susan. She told the court that she would like to have one weekend, including nights, per month, where she would not have to care for Susan. Appellee indicated that it did not matter to her as to whether appellant cared for Susan on that weekend or, in the alternative, paid an increased amount of child support so that she could obtain respite care for that weekend.

On July 27, 1994, the referee filed his report. Based upon his findings of fact, the referee concluded that a substantial change of circumstances had occurred since the time of the prior child support order. He further concluded:

"Based upon the cumulative testimony of all of the witnesses it is clear that the kind of support necessary for the child of the parties far exceeds financial support or the kind of non-monetary support in the form of physical care required by a child of normal physical and mental characteristics.

"Further Defendant's current practice of visiting for approximately six to seven (6 to 7) hours each Sunday does not comply with the Court's original order concerning visitation and companionship nor does it provide Plaintiff with a single day per week wherein she is totally relieved of the burden of care for the minor child.

"* * *

"In light of the circumstances presented regarding the condition of the minor child and the Plaintiff's back surgeries, it is essential that the Defendant increase his involvement in the care of his physically and mentally challenged child in order to meet his common law duty of support."

Pursuant to former R.C. 3109.05(A)(1)(a) through (j), the referee recommended that the amount of child support be increased to $383.56 per month per child plus poundage, effective as of September 8, 1992. In addition, he recommended:

"9. That the Defendant is ordered to commence visitation and companionship with his minor children commencing July 29, 1994, pursuant to the Court Schedule attached hereto and incorporated herein.

"10. That Defendant's summer visitation and companionship for 1994 shall be one week in duration and shall be completed by August 26, 1994.

"11. That commencing in 1995 the Defendant shall exercise summer visitation and companionship pursuant to Court schedule."

On July 28, 1994, the trial court affirmed and adopted the referee's report and recommendations. On August 8, 1994, appellant filed timely objections to the referee's report. Appellant asserted that the referee was in error with regard to recommendations one, two, three, four and five because he miscalculated both the amount of child support ordered and the effective date of the increase. The motion did not point out any specific miscalculation. Appellant further maintained that the referee erred in recommendations nine, ten, eleven and twelve by recommending "forced visitation."

In a judgment entry dated September 28, 1994, the domestic relations court found that appellant failed to point out any specific miscalculation in the determination of the child support order. It held that the amount awarded was just and equitable and that no error occurred in making the increase retroactive to September 8, 1992. Relying on *Bragg v. Gorby* (June 30, 1987), Columbiana App. No. 86–C–31, unreported, 1987 WL 13861, the trial court found that compelled visitation was in the best interest of Susan and could be ordered pursuant to a parent's duty to support his or her child. Accordingly, the court overruled appellant's objections and affirmed and adopted the referee's report and recommendations. This appeal followed.

■ Appellant's first assignment of error challenges the trial court's order requiring him to visit with his children. He argues that the concept of forced visitation as a means of nonmonetary child support has no basis in the law.

In determining that it could force appellant to exercise his visitation rights, the trial court relied on the decision of the Seventh District Court of Appeals in *Bragg v. Gorby*.

In *Bragg*, child support for Connie, a young woman with spina bifida, was terminated when she reached the age of majority. Four years later, the residential parent filed a motion in which she asked the court to order the nonresidential parent to provide support and maintenance for Connie. In granting the motion, the domestic relations court not only ordered the nonresidential parent to pay child support but also, *sua sponte*, ordered him to pick up Connie every other weekend for visitation.

On appeal, the sole question before the *Bragg* court was whether the trial court had the authority (jurisdiction) to reinstate a support order four years after termination. The Columbiana Court of Appeals applied the rule enunciated in *Castle v. Castle* (1984), 15 Ohio St.3d 279, 15 OBR 413, 473 N.E.2d 803, wherein

the Ohio Supreme Court held that a domestic relations court has the jurisdiction to order a parent to provide support to his or her mentally or physically disabled child beyond the age of majority. In *Castle,* the Supreme Court based this continuing jurisdiction upon a parent's common-law duty to support his or her child. *Id.* at paragraph one of the syllabus. The *Bragg* court then extended the rule of *Castle* to provide the trial court with the jurisdiction to enter a visitation order. Apparently, in order to confer this authority, the *Bragg* court believed that it was necessary to hold that the visitation in this particular case was a form of support. The *Bragg* court failed to set forth any law or reasoning as a foundation for this conclusion.

For the following reasons, we find that the trial court erred in applying the rule of *Bragg* to the present case.

Assuming, for the moment, that *Bragg* is not distinguishable from the present case, it is not binding authority on this court. S.Ct.R.Rep.Op. 2(G)(1). Furthermore, the principle of visitation as a form of child support has no basis in Ohio law.

 Ordinarily, child support and visitation are independent matters. *Davis v. Davis* (1988), 55 Ohio App.3d 196, 199, 563 N.E.2d 320, 324. Support is a duty and obligation imposed by statute and the common law. See R.C. 3103.03; R.C. 3109.05; *State ex rel. Wright v. Indus. Comm.* (1943), 141 Ohio St. 187, 25 O.O. 277, 47 N.E.2d 209. The phrase "support order" is a legal term of art that is statutorily defined as "an order of a court requiring payments pursuant to * * * R.C. 3109.05 * * *." R.C. 2301.34(B). The determination of a child support obligation is governed by a complicated, comprehensive statutory scheme that deals with the monetary support of a child. R.C. 3109.05, and R.C. 3113.21 to 3113.219. That scheme does not provide for visitation as a form of support.

 On the other hand, visitation is a right or privilege that is normally, but not always, granted to a nonresidential parent. R.C. 3109.051(A); *Shriver v. Shriver* (1966), 7 Ohio App.2d 169, 36 O.O.2d 308, 219 N.E.2d 300. Because it is a right, not a duty, a court cannot force a nonresidential parent to visit his or her child. *Davis, supra,* 55 Ohio App.3d at 199, 563 N.E.2d at 324; *Bradley v. Bradley* (Jan. 30, 1995), Stark App. No. CA00219, unreported, 1995 WL 42405.

Additionally, *Bragg* is distinguishable from the case before us. *Bragg* involved a child who was beyond the age of majority. Thus, the Columbiana Court of Appeals was required to rely on the common law to provide the domestic relations court with the jurisdiction to order support. In the instant case, Susan is a minor. The controlling law is found in statutes—statutes that do not, in any way, treat visitation rights as a form of child support.

■ Accordingly, the trial court did err, as a matter of law, in ordering that appellant must visit his daughter. Appellant's first assignment of error is found well taken.[1]

■ In his second assignment of error, appellant contends that the trial court erred when it made the increase in the amount of the child support award retroactive to September 8, 1992, the date that appellee filed her motion for modification.

R.C. 3113.21(M)(3) states:

"Except as provided in division (M)(4) of this section, a court may not retroactively modify an obligor's duty to pay a delinquent support payment."

R.C. 3113.21(M)(4) reads:

"A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered."

Accordingly, if a court determines that a support order should be modified, it may make the modification order effective from the date the motion for modification was filed. See *Tobens v. Brill* (1993), 89 Ohio App.3d 298, 624 N.E.2d 265; *Osborne v. Osborne* (1992), 81 Ohio App.3d 666, 611 N.E.2d 1003; *State ex rel. Draiss v. Draiss* (1990), 70 Ohio App.3d 418, 591 N.E.2d 354; *Murphy v. Murphy* (1984), 13 Ohio App.3d 388, 13 OBR 471, 469 N.E.2d 564. Therefore, determining whether to make a modification retroactive is a matter within the discretion of the domestic relations court and cannot be reversed unless the trial court abuses its discretion. *Id.* at 389, 13 OBR at 473, 469 N.E.2d at 565–566. An abuse of discretion connotes more than an error of law or judgment; it implies that the judgment of a court is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

■ As noted in *State ex rel. Draiss, supra,* 70 Ohio App.3d at 421, 591 N.E.2d at 356: "Absent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested." Any other holding might produce an inequitable result in view of the substantial time it frequently takes to dispose of motions to modify child

---

1. While appellee did not establish her out-of-pocket costs for respite care in the event that appellant failed to exercise his overnight visitation rights with Susan, we are of the opinion that the domestic relations court has the discretionary authority to, upon a motion to modify child support, deviate from the child support amount computed under R.C. 3113.215 and allow appellee any amounts incurred for respite care due to such failure. Accord *Bradley, supra.*

support obligations. *Murphy, supra,* 13 Ohio App.3d at 389, 13 OBR at 472–473, 469 N.E.2d at 565–566. In the instant case, appellant fails to point out any special circumstance. Accordingly, the trial court did not abuse its discretion in making the modification retroactive to September 8, 1992. Appellant's second assignment of error is found not well taken.

In his third assignment of error, appellant contends that the trial court erred in its calculation of the amount of funds expended by appellee in work-related child care. He, therefore, maintains that the amount of the child support award is in error.

Civ.R. 53(E)(6) [2] provided, in material part:

*"Factual Findings.* A party may not assign as error the court's adoption of a referee's finding of fact unless an objection to that finding is contained in that party's written objections to the referee's report." See, also, *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 63, 548 N.E.2d 287, 295.

In the case under consideration, appellant filed a generally worded written objection to four of the recommendations made by the referee regarding child support. He never specifically objected to Finding of Fact No. 49(h), which expressly states the amount of calculated annual work-related child care expenses. As a result, appellant waived his right to assign this alleged miscalculation as error on appeal. Accordingly, appellant's third assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is reversed on the issue of forced visitation. Pursuant to App.R. 12(B), this court enters the judgment that should have been entered by the trial court. Paragraphs (10) and (11) [3] are modified to read as follows:

---

2. Now renamed and renumbered, Civ.R. 53(E), effective July 1, 1995, provides, in part:
 "(3) Objections.
 " * * *
 "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection. If the parties stipulate in writing that the magistrate's findings of fact shall be final, they may object only to errors of law in the magistrate's decision. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 This amendment, if applicable, see Civ.R. 86(S), does not affect our resolution of appellant's third assignment of error.

3. Paragraphs (9) and (12) are rendered moot by the lapse of the time period specified in each.

"9. That the Defendant is awarded visitation and companionship with his minor children commencing July 29, 1994, pursuant to the Court Schedule attached hereto and incorporated herein."

"11. That commencing in 1995 the Defendant is granted summer visitation and companionship with his children pursuant to Court schedule."

The remainder of the domestic relations court's judgment is affirmed. Costs, as defined in App.R. 24(B), are assessed equally between the parties to this appeal.

*Judgment affirmed*
*as modified.*

MELVIN L. RESNICK and SHERCK, JJ., concur.

ABOOD, P.J., dissents as to the first assignment of error only.