OPINION
Appellant/Cross-Appellee, Bradley Harter (Bradley), appeals from judgment entered by the Court of Common Pleas of Allen County granting a modification of his child support obligation and denying his request to modify parental rights and responsibilities. Appellee/Cross-Appellant, Patricia Harter (Patricia), cross appeals from the order granting her petition for modification of child support.
Bradley and Patricia divorced on May 30, 1991. Patricia was awarded custody of their two minor children, Stacey Harter (D.O.B. 12-22-79) and Brett Harter (D.O.B. 11-20-86). Bradley was ordered to pay child support in the amount of $952.00 per month for support of both children. On June 11, 1996, the Allen County Child Support Enforcement Agency (ACCSEA) filed a motion for review and determination of Bradley's child support obligation. ACCSEA's motion was based upon the affidavit of Patricia which indicated her belief that Bradley, as the owner of an ambulance service company, was receiving more income than contemplated by the 1991 child support order.
The trial court determined that the prior child support order should be modified to reflect Bradley's current yearly income of $305,035. Bradley's child support obligation was raised from $952.00 per month to $3310.50 per month, or $1655.25 per month, per child. Further, the trial court denied Bradley's motion for an order reallocating parental rights and responsibilities and converting Patricia's sole custody to a shared parenting arrangement.
 I.
Bradley's first assignment of error states:
 The Trial Court erred in finding that a change had not occurred in the circumstances of the children and that modification of the prior custody decree was not necessary to serve the best interests of the children.
A change in the residential status of children already subject to a custody order must be necessitated by a change in circumstances.Butler v. Butler (1995), 107 Ohio App.3d 633,669 N.E.2d 291.
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child [or] his residential parent, . . . and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree . . . unless a modification is in the best interest of the child and one of the following applies:
* * *
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. § 3109.04(E)(1)(a).
Accordingly, there must first be found a change in circumstances before deciding whether a change in the caretaking of the children is necessary.
A trial court's finding with respect to an alleged change in the circumstances of children will not be disturbed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71,523 N.E.2d 846; Butler, 107 Ohio App.3d 633, 669 N.E.2d 291;Perz v. Perz (1993), 85 Ohio App.3d 374, 619 N.E.2d 1094.
Bradley argues the trial court erred when it did not find a change in circumstances of the children. Bradley cites Stacey's erratic grades, Stacey and Brett's school attendance records and Stacey's brief pregnancy as evidence which required a finding of changed circumstances.
Mere passage of time is not enough to warrant a finding of a change in circumstances. Butler, 107 Ohio App.3d 633,669 N.E.2d 291. However, as we also noted in Butler, "th[e] passage of time during a significant portion of a child's life, combined with other factors, . . . supports a finding of a change of circumstances requiring further inquiry by a trial court."107 Ohio App. 3d at 637, 669 N.E.2d at 294. In Butler, "other factors" which supported the trial court's further inquiry into the best interests of the child, was the residential parent's unruly behavior necessitating police intervention. Id. Here, there is no evidence in the record which indicates Patricia, the residential parent, has engaged in unruly behavior.
As to the children, Bradley first argues that Stacey and Brett's school absences warranted a finding of a change in circumstances. The record, however, supports the trial court's finding that most of the children's absences from school were for illness and were excused.
Bradley also claims that Stacey's fluctuating grades show a change in circumstances for her. Stacey was seventeen years old and a high school junior at the time of the March 1997 hearing. The record indicates that Stacey's grades have generally been inconsistent since the parties were divorced in 1991. Bradley argues that during one grading period, while Stacey stayed with him for six weeks, Stacey's grades overall improved. However, Bradley conceded he promised Stacey he would purchase her a car if she improved her grades while residing with him. Upon returning to her mother's new home, Stacey received no such enticements and her grades began to fluctuate once again.
Finally, Bradley contends Stacey's pregnancy is evidence of a changed circumstance. While a minor child's pregnancy or motherhood is no small matter, it is undisputed that Stacey was no longer pregnant at the March 1997 hearing and is not parenting a child. The trial court was acting within its discretion to find that Stacey's continuing circumstances as a whole had not changed so as to require further inquiry.
After reviewing the in camera interviews with both children and the trial transcript, we find competent, credible evidence to support the trial court's finding that no there was no change in circumstances requiring further review. C. E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. We determine no abuse of the trial court's discretion. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
Bradley's first assignment of error is overruled.
 II.
In Bradley's second assignment he contends the trial court erred when calculating his income for purposes of modifying his child support obligation. Bradley agrees that his child support obligation should be modified to account for his increased income since 1991, but he questions the degree of modification. The standard of review over decisions affecting child support is whether the trial court abused its discretion by entering its order. Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028.
Bradley owns all the shares of Harter Ventures, Inc. (Harter Ventures), a corporation which has elected to be taxed pursuant to26 U.S.C. § 1366, et. seq. Thus, although Harter Ventures is a corporation for all other purposes, as a "sub- chapter S corporation" it does not pay federal income tax as a corporation. Rather, for federal tax purposes it is treated as a proprietorship or partnership and its annual earnings, whether distributed or not, are treated for tax purposes as if they are the personal earnings proportionately of the individual shareholders. The shareholders, therefore, pay federal income taxes on corporate earnings, rather than dividends, together with any other individual taxable income they may have. Since Bradley is the sole shareholder, all corporate earnings or losses and applicable federal tax deductions, are treated for tax purposes as his personally, regardless of whether or not he has withdrawn the money represented by the corporate earnings.
In computing the total gross income for Bradley, the trial court averaged Harter Ventures' ordinary income over a period of two years, adding its average interest income, average capital gains and losses and average depreciation deductions for non-replacement items. Harter Ventures' corporate earnings were then added to Bradley's separate wage earnings of $72,337, for a total annual gross income of $305,035. After an adjustment was made for a minor child from Bradley's current marriage, together with his present wife's income, a combined annual income of $326,485 was used to determine Bradley's child support obligation.
Bradley, contends that the average ordinary income determined for his corporation, $240,117, was miscalculated.[1]
Bradley's accountant, Judith Foltz, testified that Harter Ventures had gross receipts of $1.4 million in 1995 and $1.5 million in 1996. Foltz stated, that after deducting various expenses of the corporation, the ordinary income of Harter Ventures reported to the I.R.S. in 1996 was $218,905. Foltz noted, however, that in 1996 the actual net income or book income for Harter Ventures was $129,451. Foltz explained this lower figure accounted for expenses not recognizable when calculating ordinary income under I.R.S. rules. Foltz noted as well, that Bradley took draws of $135,000 and a loan of $100,000 from the corporation in 1996.
Bradley first claims the trial court erred when computing his income, by averaging Harter Ventures' earnings for 1995 and 1996.
"When the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." R.C. § 3113.215 [3113.21.5](B)(5)(h). Deciding whether to average Bradley's corporate income was well within the trial court's discretion. Id.; See also, Towne v. Towne
(Nov. 27, 1996), Summit App. No. 17772, unreported.
The trial court explained that due to the "substantial amount of exchange of property giving rise to the inclusion of capital gains or capital losses in repetitive years . . .," averaging the corporate income over a two year period was warranted. This decision appears reasonably calculated to ascertain the earnings of Harter Ventures and does not rise to the level of an unreasonable, unconscionable or arbitrary decision. Blakemore,5 Ohio St.3d 217, 450 N.E.2d 1140.
Bradley next asserts the trial court erred by failing to use Harter Ventures' actual net income or Bradley's actual draws from the corporation to determine his total gross annual income.
First, Bradley's draws from a Subchapter S corporation are not relevant as to how much income he received from the corporation. As an S corporation, Harter Ventures' total earnings are attributable to and available to Bradley. I.R.C. § 1366(a)(b)(c). Taking a draw from such a corporation is no different than withdrawing money from a personal savings account, such an activity is not the generation of income. Accordingly, the trial court did not abuse its discretion when refusing to base Bradley's income on the $135,000 he drew from Harter Ventures in 1996.
Bradley also argues the trial court erred when looking to Harter Ventures' reported ordinary income in 1996 of $218,905[2] instead of its "actual net income" for 1996 of $129,451.
Bradley claims ordinary and necessary expenses were expended by Harter Ventures in the amount of $96,130 which should have reduced the 1996 ordinary income of Harter Venture's to $129,451. An itemized list these additional expenses is as follows:
 1. ($4,568) 50% of meals and entertainment costs which did not qualify for a deduction under the IRS code.
 2. ($2,113) Bradley's personal Officer Life Insurance Policy
 3. ($17,500) Sec. 179 depreciation expense on equipment
4. ($55,173) Capital loss for 1996
 5. ($16,776) Charitable contributions for 1996 ________
Total: ($96,130).
Two of the five items Bradley claims should have been deducted from Harter Ventures' ordinary income, were actually deducted. First, the $55,173 capital loss was recognized by the court when it averaged Harter Ventures' capital gains and losses over a two year period. The trial court did not abuse its discretion when refusing to consider it a second time.
Next, the Section 179 depreciation deduction of $17,500 had also already been recognized by the trial court when computing Bradley's gross income. As noted, the trial court viewed the "ordinary income" as listed on Harter Ventures' S corporation tax return as evidence of Harter Ventures' earnings for 1996. As explained by Bradley's accountant, the Section 179 depreciation expense of $17,500 was part of the $108,552 in depreciation expenses used to reduce the $1.5 million in gross receipts made by Harter Ventures in 1996. Accordingly, the trial court did not abuse its discretion when refusing to deduct this depreciation expense twice.
The remaining three expenses are Harter Ventures' charitable contributions, Bradley's life insurance policy, and 50% of meals and entertainment expenses. Bradley claims these expenses were ordinarily and necessarily expended by Harter Ventures in the generation of income.
 (a) `Ordinary and necessary expenses incurred in generating gross receipts' means actual cash items expended by the parent or the parent's business and includes depreciation expenses of replacement business equipment as shown on the books of a business entity.
 (b) Except as specifically included in `ordinary and necessary expenses incurred in generating gross receipts' by division (A)(4)(a) of this section, `ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.
R.C. § 3113.215(A)(4)
Not all "actual cash items expended by the parent or the parent's business" are "ordinary and necessary" to the generation of gross receipts. Id. The trial court acted within its discretion when refusing to consider Harter Ventures' charitable contributions, additional meal and entertainment expenses as well as Bradley's life insurance policy as "ordinary and necessary
expense[s]" in the generation of gross receipts for Harter Ventures. Id. (emphasis added); see generally, Blakemore,5 Ohio St.3d 217, 450 N.E.2d 1140.
Finally, Bradley argues the trial court erred by adding back into his income $11,500 attributable to the corporation's depreciation expenses for non- replacement equipment.
The trial court, when computing Harter Ventures' earnings stated, "[t]he depreciation expense that is not replacement shall also be added to the base amount." Accountant Foltz stated that of the $108,905 in depreciation expenses claimed in 1996, $11,500 did not relate to the replacement of business equipment. The same amount was true for 1995. Bradley claims this average depreciation amount of $11,500.00, not related to replacement of equipment, should not have been added to his income. The base amount, however, referred to by the trial court was not added toBradley's "self-generated income," but rather added to the ordinary income of Harter Ventures in order to arrive at Bradley's actual earnings from that source for child support purposes.
The child support statute recognizes that depreciation expenses are not actual cash expenditures of a corporation for a given year. The statute does, nonetheless, permit a limited deduction for these expenses when calculating income. The applicable statute reads:
 'Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business . . . or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts * * *.
R.C. § 3113.215(A)(3). The division states further,
 (4)(a) `Ordinary and necessary expenses incurred in generating gross receipts' means actual cash items expended by the parent or the parent's business and includes depreciation expenses of replacement business equipment as shown on the books of a business entity.
 (b) Except as specifically included in `ordinary and necessary expenses incurred in generating gross receipts' by division (A)(4)(a) of this section, 'ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.
(emphasis added).
R.C. § 3113.215(A)(4)
It is important to recognize that depreciation expenses claimed by a corporation under federal tax law are not actual cash outlays of the corporation for the given tax year. Where a corporation owned by a parent/obligor is one other than an S corporation, this distinction is immaterial as the corporation's earnings are not necessarily the parent's earnings unless specifically declared. However, when a parent obligor is an owner of an S corporation, this distinction is critical when determining the actual cash available to the parent to satisfy the child support obligation, for the subtraction of non-cash depreciation may result in an increase in corporate cash available for that purpose.
Bradley cites our attention to Sizemore v. Sizemore, (1991),77 Ohio App.3d 733, 603 N.E.2d 1032, which found reversible error to exist where a trial court added to a parent's income the value of a noncash depreciation expense. Therein, the court stated,
 [w]hen depreciation is excluded from ordinary and necessary expenses of a corporation, it is unreasonable and contrary to law of this state to add the useless depreciation item to the income of the parent for the purpose of determining the amount available for a child support order. (emphasis added).
Sizemore, 77 Ohio App.3d at 740, 603 N.E.2d at 1036; seealso, Sofonia v. Norton, (Hancock App. Oct. 6, 1993), No. 5-93-28, unreported. The court held it would be unreasonable to add such expense to a parent's income as such expenses have no real value and are merely used as an accounting tool to determine tax liability. Id. Here, however, because such expenses have no real value, this accounting fiction must be realized or the corporateincome of an S corporation owned by a parent/obligor would be artificially deflated.
When computing child support, the Ohio Revised Code does permit the deduction of depreciation expenses which relate to the replacement of equipment. R.C. § 3113.215(A)(4)(a). The code does not, however, permit the deduction of depreciation expenses for other noncash items, such as real estate. R.C. § 3113.215(A)(4)(b). Accordingly, the trial court did not abuse its discretion when recognizing Harter Ventures' ordinary income may not be reduced by $11,500 in non-replacement equipment depreciation expenses when it determined this portion of Bradley's gross income for child support purposes.
The manner in which the trial court calculated Harter Ventures' earnings, to arrive at Bradley's gross income, was within its discretion. Booth, 44 Ohio St.3d 142, 541 N.E.2d 1028. Bradley's second assignment of error is overruled.
 III.
In her cross-appeal, Patricia raises the following assignment:
 The trial court erred in not ordering the effective date of child support to be June 11, 1996.
Patricia claims the judgment entry granting her petition for a modification of increased child support should have been retroactively applied to the date of her petition, June 11, 1996, and not the date of the judgment entry, July 31, 1997.
Patricia, through ACCSEA, filed her petition for review of child support on June 11, 1996. Final judgment was not entered on this petition until over a year later, July 31, 1997. The trial court did not specifically address the date when the modified child support order would become effective. Patricia argues that inequities would result if the trial court's judgement entry is not retroactively applied to the date of her petition. Bradley has not responded to this assignment of error.
Generally, "a court may not retroactively modify an obligor's duty to pay a delinquent support payment." R.C. § 3113.21(M)(3). An exception, however, may be invoked by the trial court when a petition to modify child support has been filed. As noted in division (M)(4):
 A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.
R.C. § 3113.21(M)(4).
Patricia argues that this statute, together with equities recognized in case authority, obligates a court to retroactively apply a modified child support order to the date the petition therefor was filed. Patricia's argument is not well taken.
"[D]etermining whether to make a modification retroactive is a matter within the discretion of the domestic relations court and cannot be reversed unless the trial court abuses its discretion."Hamilton v. Hamilton (1995), 107 Ohio App.3d 132, 139,667 N.E.2d 1256, 1261. An abuse of discretion is evinced by an unreasonable, unconscionable or arbitrary attitude by the trial court. Blakemore, 5 Ohio St.3d 217, 450 N.E.2d 1140.
The trial court did not abuse its discretion when it remained silent on whether Bradley's modified child support obligation should have been applied retroactively. The statute is clear. A "court may modify an obligor's duty to pay support." R.C. § 3113.21(M)(4) (emphasis added). Accordingly, this provision certainly does not command a court to make the modification retroactive to the date the petition was filed. Moreover, there is no requirement that the trial court state explicit findings as to why it elected to remain silent on the issue. A trial court's silence cannot be evidence of an abuse of discretion when there is no duty for the court to speak.
Patricia asserts that in Tobens v. Brill (1993), 89 Ohio App.3d 298,624 N.E.2d 265, we recognized the "reasonableness" of retroactively applying a child support obligation to the date the petition was filed. However, in Tobens, the appellant/obligor therein, claimed the trial court erred when it retroactively applied his modified child support payments to a date prior to the date of the petition for modification. Accordingly, in sustaining his assignment of error we held that "if a court determines that a support order should be modified, it can only make the modification order effective from the date the motion for modification was filed." Id. at 304, 624 N.E.2d at 269.
Tobens stands for the proposition that if a court determines a child support order should be modified it may elect to apply the order retroactively to the date the petition for modification was filed, but no earlier. Any earlier application of the order would offend the notice requirement set forth in R.C. § 3113.21(M)(4). Furthermore, we expressed no opinion in Tobens as to the "reasonableness" of applying a modified child support order to the date of the petition.
Accordingly, we hold that R.C. 3113.21(M)(4) permits, but does not require, a trial court to retroactively apply a modified child support order to the date the petition for modification was filed. Hamilton, 107 Ohio App.3d 132, 667 N.E.2d 1256. Patricia's sole assignment of error on her cross-appeal is overruled.
Judgment Affirmed.
 SHAW, P.J., and EVANS, J., concur.
[1] The trial court arrived at an average corporate income of $240,117 by averaging Harter Ventures' 1995 ordinary income of $261,329 with its 1996 ordinary income of $218,905. The court then accounted for the average capital gains and losses over the two years for a negative amount of ($26,069), and Harter Ventures' average depreciation deduction on non-replacement items for $11,500 to arrive at Bradley's "other annual income" of $225,548 listed on line 5 of the worksheet.
[2] Bradley does not contest that Harter Ventures' interest income for 1996, $6,676, should be added to Harter Ventures' ordinary income.