JOURNAL ENTRY AND OPINION
In these consolidated appeals, defendant Oscar Nicholson, Jr. challenges the orders of the domestic relations court that determined that he had a child support arrearage and that found him in contempt of court. For the reasons set forth below, we affirm both orders.
The parties were divorced on July 27, 1988. Within this decree, the trial court ordered defendant to pay $101.69 per week per child for each of the parties' three children1 for child support. On January 1, 1993, the parties entered into an agreed entry which provided that appellant had no support arrearage, that plaintiff and the children were residing with him, and that so long as they continued to reside with him, no child support was due to plaintiff.
On August 18, 1995, plaintiff filed a second complaint for divorce, alleging that she and defendant had entered into a common law marriage following the 1988 divorce. Within this document, plaintiff asserted that she and the parties[1] three children resided in Highland Heights and that defendant resided in South Euclid. She asserted that defendant had been out of the marital home for more than thirty days and she obtained an ex parte restraining order. This action was subsequently dismissed in December 1997 after the trial court determined that no common law marriage existed.
On August 26, 1998, plaintiff filed a motion to show cause, alleging that defendant had a child support arrearage. On this same date, plaintiff filed a motion to modify defendant's child support obligation. On March 6, 2000, the domestic relations court issued an interim support order in this matter which required defendant to pay $850 per month per child in child support. The matter proceeded to hearing on May 22, 2000, May 23, 2000, and July 19, 2000.
The evidence demonstrated that in 1999, plaintiff earned $11,338 and in 1998, she earned $8,620. Plaintiff testified that she has had a variety of jobs, including catering, caring for children, and singing. She pays $1,200 for rent and owes approximately $9,000 in connection with her purchase of a car.
The evidence further demonstrated that defendant earned $263,000 in 1998, and $306,225 in 1999. Although these sums were declared on defendant's income tax returns, his accountant claimed that the totals should be reduced by $90,000 for both years for sums that defendant had repaid to his closely held corporation. Defendant's accountant admitted however, that this system was devised to recategorize income which defendant received from the corporation in previous years but did not declare as income. (Tr.141). The accountant also admitted that the IRS has not audited defendant and is not currently seeking any repayment for any under-reporting. The evidence further indicated that the corporation pays $30,000 into a retirement account for defendant each year. Finally, defendant's accountant admitted that some of the automobile expenses which he declared should have been added back as income.
The records of defendant's child support payments were also introduced into evidence. The court also heard evidence that on August 18, 1995, plaintiff filed for divorce. At this time, she averred that the parties had been living separately for the past ninety days. Plaintiff stated that defendant obtained a separate residence in late 1994. Defendant testified that he purchased this house for his mother but did not move into it until August 1995.
On August 21, 2000, the trial court issued a judgment entry in this matter. The court determined that plaintiff has earned approximately $11,338 per year over the last several years and that there was no evidence from which additional income could be imputed to her. The court further found that defendant earned $263,000 in 1998, and $306,225 in 1999. The court further determined that the 1988 order of divorce set forth defendant's child support obligation ($101.69 per week per child) and that any interim support orders entered in connection with plaintiff's second divorce action were no longer binding. The trial court further determined that defendant had stopped paying court ordered child support on August 18, 1995 and that he had incurred an arrearage from this date until August 26, 1998 of $9,708.17 for this time period.
The trial court then modified defendant's support obligation, thereby granting plaintiff's motion dated August 26, 1998. The trial court ordered that from August 26, 1998 to December 31, 1998, defendant should have paid $3,992.82 plus poundage per month and from January 1, 1999 onward, he should have paid $4,600.52 per month plus poundage, thus accruing an arrearage of $59,910.86 for this time period. The court ordered defendant to make two payments of $25,000 prior to December 31, 2000, and to pay $1,000 per month until the balance was paid. Defendant appeals this order in case no. 78595.
On August 25, 2000, plaintiff filed a additional motion to show cause and to determine his arrearage. Defendant's counsel appeared at the hearing and asserted that the trial court did not have personal jurisdiction over defendant. On October 6, 2000, the trial court determined that defendant had a child support arrearage, found him in contempt of court for failing to make the payments described in the court's August 2000, order, and sentenced defendant to thirty days in jail. The trial court ordered the jail sentence stayed if defendant paid $40,659.55 on or before October 24, 2000. Defendant paid the purge order and now appeals these proceedings in case no. 78756.
Defendant's first assignment of error states:
 THE COURT ERRED TO DEFENDANT-APPELLANT'S DETRIMENT WHEN IT DETERMINED THAT THERE EXISTED A CHILD SUPPORT ARREARAGE TOTALING $69,619.03.
Within this assignment of error, defendant maintains that the trial court erred in failing to deduct from his declared yearly income for 1998 and 1999, $90,000 for both years which he pays to his closely held corporation for repayment of a debt. Defendant further claims that the trial court erred in calculating his income with reference to his automobile expenses and retirement benefits received from his closely held corporation, and in failing to credit him for an in-kind child support payment.
With regard to procedure, this court conducts its review pursuant to the abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142. To find an abuse of discretion we must find the decision of the trial court is "unreasonable, arbitrary, or unconscionable," and not merely an error of judgment. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
As to defendant's contention that he was entitled to claim an expense of $90,000 from his yearly income for repayment of a debt to his own closely held corporation, defendant relies upon Wellman v. Munyan (June 14, 2000), Scioto App. No. 99CA2638, unreported. We find Wellman v. Munyan, supra, inapposite, as that case expressly distinguished the situation, present herein, where the creditors did not intend to seek repayment of the loans. In this case, although defendant provided testimony concerning his accountant's reasons for structuring this repayment, there was no evidence to demonstrate that there was any actual need to repay this amount. As the trial court concluded:
 Dr. Nicholson had a habit in prior years of taking money out of his corporation without declaring it as income, thus having the use of tax free income. When it became apparent to his accountant that Dr. Nicholson could have a very large tax liability on this money, he set him on a repayment schedule of these sums to his corporation. However, the Court has not lost sight of the fact that Dr. Nicholson solely owns his corporation and is merely repaying himself.
In short, it has not been shown that these sums were ordinary or necessary expenses pursuant to R.C. 3113.215(A)(4) and the repayment of these amounts did not result in any net loss to defendant.
As to defendant's claim of a deduction in income for repayment of his medical school loans, we note that there was no evidence of any repayment of medical school loans during the years at issue. This claim is therefore not supported in the record. L.A.D. v. Bd. of Commrs. (1981), 67 Ohio St.2d 384, 388.
As to defendant's claim that the trial court erred in fashioning a retroactive support modification, we note that in Hamilton v. Hamilton (1995), 107 Ohio App.3d 132, 139, the court stated:
R.C. 3113.21(M)(3)states:
 "Except as provided in division (M)(4) of this section, a court may not retroactively modify an obligor's duty to pay a delinquent support payment."
R.C. 3113.21(M)(4) reads:
 "A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered."
 Accordingly, if a court determines that a support order should be modified, it may make the modification order effective from the date the motion for modification was filed. See Tobens v. Brill (1993), 89 Ohio App.3d 298, 624 N.E.2d 265 * * *.
In this instance, defendant complains that the trial court erred in determining that he had a $9,708 arrearage from the time period of August 18, 1995 until August 26, 1998. Defendant asserts that since plaintiff did not file her motion to modify until August 1998, no modification should have been ordered for any period prior to that time. This claim is without merit. The record clearly indicates that the parties agreed in 1993 that no child support arrearage would be incurred as long as the parties continued to reside together. The record also clearly demonstrates that in August 1995, the parties again separated. At this time, plaintiff asserted child support claims in connection with her second divorce action. When the trial court subsequently determined that no common law marriage was created following the 1988 divorce, these support issues were decided in the present action. The instant decision therefore was made with reference to motions of which defendant had notice and this claim is therefore without merit.
With regard to defendant's contention that the trial court erred in including his automobile expenses within his income, we note that pursuant to R.C. 3113.215(A)(3), self-generated income specifically includes expense reimbursements for company cars if it is significant and reduces living expenses. See, also Sizemore v. Sizemore (1991),71 Ohio App.3d 733, 738.
With regard to defendant's claim that the trial court erred in crediting as income one half of the contributions made by his corporation to his 401(K) retirement plan, it is clear that R.C. 3113.215(A)(2) specifically includes pensions within the items constituting income but excludes those payments made from the employer to the obligor. Thus the trial court acted well within its discretion in determining that one half of the pension payments were income.
Finally, as to defendant's claim that the trial court failed to account for his in kind support payments which were in the form of his payment of the mortgage and living expenses at the home which the parties shared prior to August 1995, the trial court did not consider any child support obligations to accrue at this time. This claim is therefore not supported in the record. The undisputed evidence further demonstrated that this home eventually went into foreclosure. We find no abuse of discretion in connection with the court's failure to credit defendant's claim of in-kind contributions.
This assignment of error is without merit.
Defendant's second assignment of error states:
 THE COURT ERRED TO DEFENDANT-APPELLANT'S DETRIMENT WHEN IT FOUND DEFENDANT-APPELLANT IN CONTEMPT OF COURT.
Defendant next asserts that the trial court was without jurisdiction to proceed with the September 25, 2000, contempt hearing because he was not actually served with the motion to show cause and motion to determine arrearage. Defendant further asserts that the trial court erred in proceeding in the absence of service upon him and in permitting his attorney to withdraw from this matter.
A divorce court retains continuing jurisdiction to determine whether an obligor is in contempt of court with regard to child support obligations. Pursuant to Civ.R. 75(J), continuing jurisdiction can be properly invoked only by motion filed in the original action, notice of which shall be served in the manner provided for service of process under Civ.R. 4 through Civ.R. 4.6. See Cooper v. Cooper (1980),10 Ohio App.3d 143. Similarly, a contempt proceeding is "essentially a new and independent proceeding in that it involves new issues and must be initiated by the issuance and service of new process." Hansen v. Hansen
(1999), 132 Ohio App.3d 795. "Fundamental due process requires `notice' to the defendant sufficient to apprise him of the action's pendency so he may present his objections thereto." Szymczak v. Szymczak (2000),136 Ohio App.3d 706, 711.
In this instance, the record does not conclusively demonstrate that the motion to show cause was served upon defendant. Nonetheless, we note that personal jurisdiction can be obtained through service of process, waiver or voluntary submission to the court's jurisdiction. Maryhew v. Yova
(1984), 11 Ohio St.3d 154, 156, and in this instance, defendant waived any defects by complying with the purge order on October 23, 2000. In any event, his compliance has rendered this claim moot. See Caron v.Manfresca (September 23, 1999), Franklin App. No. 98AP-1399, unreported.
Accordingly, this claim is without merit.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND JAMES J. SWEENEY, J., CONCUR.
[1] The parties children are Bryson (d.o.b January 15, 1984), and Anthony and Antonio (d.o.b. August 1, 1986).