DECISION.
In January 1995, plaintiff-appellee, Julie B. Torbeck, filed a complaint for divorce against defendant-appellant, Thomas W. Torbeck.[1]
In September 1995, the parties presented to the court a shared-parenting plan with an attached child-support computation worksheet subscribed under oath by the parties. In October 1995, the domestic relations court entered a final decree of divorce. On the same date, the court approved and adopted the shared-parenting plan and incorporated it into a separate decree of shared parenting.
In March 1999, Julie filed a motion to modify the child-support order based upon a dramatic increase in Thomas's income. In September 1999, Julie filed a motion for contempt due to Thomas's failure to notify the Child Support Enforcement Agency ("CSEA") of his increases in income that had occurred since the date of the divorce decree. Following an evidentiary hearing before a magistrate, Thomas was held in contempt, and his child-support obligation was recalculated based upon the increase in his income. Both parties filed objections to the magistrate's decision. On December 13, 2000, the trial court issued a decision on the objections. It is from this order that Thomas appeals.
Thomas assigns as error the following: (1) the trial court's finding that he was in contempt for failing to notify CSEA of an increase in his income; (2) the trial court's finding that he had committed fraud upon the court; (3) the trial court's order that he pay Julie's attorney fees; (4) the trial court's finding that his failure to notify CSEA was willful; (5) the trial court's failure to consider extended visitation as a deviation factor for child support; and (6) the trial court's refusal to accept the magistrate's decision to reduce his child-support obligation. Finding no merit in these assignments of error, we affirm the trial court's judgment.
In reviewing the propriety of a trial court's judgment in a domestic relations case, we ordinarily apply an abuse-of-discretion standard. "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment."[2] An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.[3]
In his first assignment of error, Thomas argues that the trial court erred by finding him in contempt for failing to notify CSEA of an increase in his income, because (1) the court could not properly admit into evidence its own income-reporting order, and (2) there was no evidence that he had notice of the income-reporting requirement. We find no merit in either assertion.
Clearly, the trial court could have taken judicial notice of its own actions and orders in earlier stages of the case.[4] The court's contempt finding was based upon its order that Thomas, as the obligor, was to report any increase in his income. In its "Notice to Income Provider to Withhold Obligor Income/Assets" and its attached "Addendum Withholding Notice to Parties to a Support Order," the court instructed the obligor in the following manner:
WHEN THE SUPPORT OBLIGOR MUST NOTIFY THE (CSEA)
* * *
 (1) Of any change in employment, including self-employment, and of the availability of any other sources of income that can be the subject of any withholding or deduction.
* * *
 (4) Of any change in income to which the withholding notice applies, of the commencement of employment, including self-employment, and of the availability of any other sources of income that can be the subject of any withholding or deduction requirement and a description of the nature of any new employment, the name and business address of any new employer, and any other information reasonably required by the agency.
 This order was incorporated by reference into the parties' final divorce decree, as well as into their final decree of shared parenting. Both decrees provided that a child-support order would be issued and that the obligor would be required to notify CSEA of any change in his income status:
 The specific withholding or deduction requirements to be used to collect the support shall be set forth in and determined by reference to the notices that are mailed by the court or Child Support Enforcement Agency in accordance with Divisions (A)(2) and (D) of O.R.C. 3113.21
or that court orders that are issued and sent out in accordance with Division (D)(6), (D)(7), or (H) of 3113.21, and shall be determined without the need for any amendment to the support order. Those notices and court orders, plus the notices provided by the court or agency that require the person who is required to pay the support to notify the Child Support Enforcement Agency of any change in their employment status or of any other change in the status of their assets, are final and are enforceable by the Court.
 The magistrate found that not only was Thomas informed of his obligation to report increases in his income through the decrees of divorce and shared parenting, but he also was served with written notice by the court. Former R.C. 3113.21, in effect at the time that the court's order was journalized, required that the obligor be given notice that he must immediately report to CSEA any change in his employment and the availability of any other sources of income that could be subject to any withholding or deduction requirement.[5] The magistrate below found that Thomas had been served with the notice as required under the statute:
 The court's own records reflect that on 10-5-95, * * * such withholding notice was in fact served on husband * * *. Further, the record reflects that the notice was sent to the address provided by husband to the court, and that same was not returned, this comporting with the court's standard procedures in such matters, as testified to by Ms. Mary `Peg' Casey, accounts assistant supervisor for the Court of Domestic Relations.
 The record demonstrates that, in September 1995, Thomas signed under oath a child-support computation worksheet in which he represented that his employment income was $68,343. At the hearings on Julie's motions to modify support and for contempt, Thomas admitted that, in October 1995, he had received a commission of $48,348 for transactions that had occurred prior to that time. Thomas's W-2 statements reported his actual wage earnings as follows: (1) in 1995, $120,340; (2) in 1996, $150,634; (3) in 1997, $147,970; and (4) in 1998, $177,880. Thomas testified that his 1999 income consisted of a $70,000 base salary with commissions to that point of $132,462, for a total of over $202,000 for the year. Despite vast increases in his income from the sum he had originally reported on the child-support calculation worksheet, Thomas failed to report any increase. Based upon this record, we cannot say that the trial court abused its discretion in finding Thomas to be in contempt as a result of his violation of the court's income-reporting order. We overrule the first assignment of error.
In his second assignment of error, Thomas argues that the trial court erred by finding that he had committed fraud upon the court and thereby retroactively modifying child support to the date of the divorce decree. Thomas correctly asserts that normally a trial court may retroactively modify a child-support award so that it becomes effective on the date that the motion to modify child support was filed.[6] Nevertheless, a trial court "may modify non-delinquent child support obligations retroactively to a date prior to the filing of the motion to modify if special circumstances are demonstrated."[7] Where, as in this case, there is proof of fraud, such a retroactive modification may be ordered.[8] A trial court's determination to modify retroactively will not be disturbed absent an abuse of discretion.[9]
In this case, the record demonstrates that Thomas submitted under oath a child-support calculation worksheet that contained a gross misstatement of his income, and that he failed to notify the court of the increases in his income over the years. Under these circumstances, we cannot say that the trial court abused its discretion in its determination to retroactively modify the child-support order. Thomas's second assignment of error is overruled.
In his third assignment of error, Thomas claims that the trial court erred by requiring him to pay Julie's attorney fees. Such an award was proper after the finding of contempt and was permitted by former R.C.3113.219,[10] which stated that, "in any proceeding in which a court determines the amount of support to be paid pursuant to a support order, the court may include in the support order a statement ordering either party to pay the costs of the action, including, but not limited to attorney fees * * *." It is well established that an award of attorney fees is within the sound discretion of the trial court.[11] In light of the fact that Julie's attorney fees were incurred as a result of Thomas's actions in misrepresenting his true income, we cannot say that the trial court abused its discretion in awarding attorney fees to Julie. Thomas's third assignment of error is overruled.
In his fourth assignment of error, Thomas complains that the trial court erred in assessing interest on the support arrearage, because his failure to notify CSEA of the increases in his income was not willful. Former R.C. 3113.219 provided, in part,
 If the court determines the obligor has failed at any time to comply with a support order, the court shall issue a new order requiring the obligor to pay support. If the court determines that the failure to pay was willful, the court shall assess interest on the amount of support the obligor failed to pay from the date the court specifies as the original date the obligor failed to comply with the order * * *.
 Because the record supports the trial court's determination that Thomas's failure to notify the CSEA of the increases in his income was willful, we cannot say that the court abused its discretion in assessing interest on the arrearage. The fourth assignment of error is overruled.
In his fifth assignment of error, Thomas contends that the trial court erred by failing to consider his extended visitation as a factor to allow a deviation in child support. Former R.C. 3113.215, in effect at the time, governed the calculation of the amount of a child-support obligation.[12] Subsection (B)(6)(a) allowed for a deviation from the basic child-support schedule only where the schedule's application "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section * * *."
To determine whether the amount of child support that would result from the use of the basic support schedule would be unjust or inappropriate and would not be in the best interest of a child, former R.C. 3113.215(B) allowed a court to consider various factors. Initially, we note that the trial court in this case deviated from the basic child-support schedule after consideration of Thomas's in-kind contributions, as provided by subsection (B)(3)(j). One of the other factors that the court was allowed to consider was "extended times of visitation or extraordinary costs associated with visitation." Thomas complains that the trial court "incorrectly found that the two separate factors are dependent on each other." But the record discloses that the magistrate thoroughly considered Thomas's extended visitation time as well as his claimed visitation costs. Therefore, we cannot say that the trial court abused its discretion in refusing to deviate from the schedule based upon this factor. Thomas's fifth assignment of error is overruled.
In his sixth assignment of error, Thomas contends that the trial court erred by overruling the magistrate's decision to reduce his child-support obligation by $7,000 in 1999. The magistrate deviated from the basic child-support schedule in this instance after considering the benefit derived by Julie from her subsequent remarriage and the disparity in household incomes, as provided for by former R.C. 3113.215(B)(3)(g) and (h). The magistrate deviated from the schedule despite his own recognition of Julie's "contribution of a significant portion of her household income to the benefit of the children," and of the fact that Thomas's household income was over $50,000 more than Julie's.
The trial court acknowledged that these were proper considerations, but noted that the benefit gained by remarriage was not independent of the other statutory deviation factors. The trial court concluded that the magistrate's $7,000 deviation was inappropriate because (1) Julie had no income, while Thomas had a substantial income; (2) Thomas's household income was much greater than Julie's; and (3) Julie had contributed to the children's expenses as provided by the parties' shared-parenting plan. Because we cannot say that the trial court's decision was arbitrary, unreasonable, or unconscionable, Thomas's final assignment of error is overruled. We affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] Because the parties share the same surname, we refer to them by their first names.
[2] Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028.
[3] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
[4] See Diversified Mortgage Investors, Inc. v. Athens County Bd. ofRevision (1982), 7 Ohio App.3d 157, 159, 454 N.E.2d 1330, 1333; see, also, In re Cavender (Mar. 19, 2001), Madison App. No. CA2000-06-037, unreported.
[5] Former R.C. 3113.21 was repealed, effective March 22, 2001.
[6] See Gerlach v. Gerlach (1997), 124 Ohio App.3d 246, 251,705 N.E.2d 1287, discretionary appeal not allowed (1998),81 Ohio St.3d 1495, 691 N.E.2d 1057.
[7] Bender v. Bender (July 18, 2001), Summit App. No. 20157, unreported, citing Zaccardelli v. Zaccardelli (July 26, 2000), Summit App. No. 19894, unreported; see, also, McLaughlin v. Arrington (Apr. 20, 2001), Erie App. No. E-00-058, unreported; Neiheiser v. Neiheiser (Jan. 13, 2000), Cuyahoga App. No. 75184, unreported, discretionary appeal not allowed (2000), 88 Ohio St.3d 1516, 728 N.E.2d 403; Sprankle v. Sprankle
(Mar. 25, 1998), Medina App. No. 2678 M, unreported.
[8] See Osborne v. Osborne (1992), 81 Ohio App.3d 666, 674-675,611 N.E.2d 1003, 1005; Gerlach, supra.
[9] Hamilton v. Hamilton (1995), 107 Ohio App.3d 132, 139,667 N.E.2d 1256, 1261, discretionary appeal not allowed (1996),75 Ohio St.3d 1425, 662 N.E.2d 27; see, also, In re Bailey (Nov. 6, 1998), Hamilton App. No. C-970871, unreported.
[10] Former R.C. 3113.219 was amended and renumbered R.C. 3123.17, effective March 22, 2001.
[11] See Rand v. Rand (1985), 18 Ohio St.3d 356, 481 N.E.2d 609, citing Blum v. Blum (1967), 9 Ohio St.2d 92, 223 N.E.2d 819.
[12] Former R.C. 3113.215 was repealed, effective March 22, 2001.