**WALKER, Appellant,**

v.

**WALKER, Appellee.**

[Cite as *Walker v. Walker*, 151 Ohio App.3d 332, 2003-Ohio-73.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 01–JE–25.

Decided Jan. 13, 2003.

---

24.  Rookard was not present at the August 28th meeting.

David D. Gorman and Southeastern Ohio Legal Services Program, for appellant.

GENE DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Lisa A. Walker, appeals from a judgment of the Jefferson County Common Pleas Court that affirmed and extended the decision of the magistrate. The magistrate ordered the retroactive modification of child-support arrears, and the trial court ordered alternative child-support orders with respect to future support payments.

{¶ 2} On September 21, 1989, appellant and defendant-appellee, William C. Walker, were divorced in Jefferson County. Appellant was named the custodial and residential parent of the two minor children. Appellee was granted visitation and ordered to pay $268 plus two percent poundage every two weeks for child support.

{¶ 3} In order to prevent confusion, it is important to note that there are several types of support orders that are involved in this case. Each "set" of orders, or a "dual order" as they are referred to in the appellant's brief, includes two payment scales. The first payment scale is based on periods when appellee is employed; the second, the "alternative support order," applies during periods when appellee is unemployed and collecting unemployment income. The first set of support orders concerns the arrearage amount; thus, it is applied retroactively in lieu of the original support order. The second set is to be applied toward future payments, with the alternative support order taking into account those times in the future when appellee may be unemployed.

{¶ 4} On November 1, 2000, the Jefferson County Child Support Enforcement Agency ("CSEA") filed a motion for contempt, a motion for judgment on arrears, and a motion for cash bond against appellee. Appellee failed to appear at the January 5, 2001 hearing. The magistrate subsequently issued an order to show cause and a warrant for appellee's arrest.

{¶ 5} The magistrate held a hearing for CSEA's motions on April 16, 2001. At this time, the parties agreed that appellee owed arrears totaling $65,378.96. Appellee objected to a proposed order that he make payments of $134.84 toward the arrears in addition to the support order of $674.18. Appellee argued that his profession is of such a nature that he has an erratic work schedule. He often

experiences periods of unemployment while awaiting the assignment of new jobs to him by his union, Plumber and Pipefitters Local 490. Consequently, appellee maintained that he would not be able to consistently make the additional arrearage payments during these frequent periods of unemployment.

{¶ 6} The court suggested to appellee that the court could enter an alternate support order based on appellee's unemployment income that would take effect during appellee's periods of unemployment. Appellee, appellant, and the counsel for the CSEA all agreed to the ordering of a dual payment order, with respect to the arrearage, one for periods while appellee was employed, the other for periods when he received unemployment benefits. The hearing was adjourned and continued.

{¶ 7} The CSEA recalculated the child-support arrearage based on the new dual payment order, taking into account the periods between 1993 and 2001 during which appellee was unemployed. A second hearing was held on June 5, 2001, and the court reduced the arrearage accordingly based on these recalculated figures. The magistrate explained to the parties that the court was following the long-standing policy of the Jefferson County Domestic Relations Court. Jefferson County courts traditionally bifurcate the child-support work sheet, thus creating two support orders, one based on employment income and one based on unemployment income. Consequently, the court was merely readjusting the arrearage amount to reflect the periods of appellee's unemployment from 1993–2001. The magistrate further recommended that the trial court issue an alternative support order, for future support payments, calculated on appellee's unemployment income.

{¶ 8} On August 27, 2001, the trial court held a hearing on appellant's objections to the magistrate's findings. In affirming the magistrate's findings, the trial court reiterated that the use of dual payment orders was in accordance with the historical practices of the court. The trial court justified its use of these orders, citing the six-month "lag time" needed to adjust a support order following a change in income. Thus, the alternative support order is seen as a convenient and expedient shortcut for the court to adjust support in cases such as the one that is on appeal.

{¶ 9} The trial court held that, since there is no statutory prohibition against alternative support orders, they may be legally issued concurrent to the original support order. Likewise, since it was the policy of the county to issue alternative support orders in 1993, the arrears accumulated during that time could be accordingly reduced, despite the fact that the court had never previously issued such an order.

{¶ 10} It is from the trial court's affirmation of the magistrate's recommendation that appellant now appeals.

{¶ 11} Appellant's first assignment of error states:

{¶ 12} "The trial court erred in retroactively reducing the defendant's child-support arrearage."

■ {¶ 13} Issues of child support are reviewed under an abuse-of-discretion standard. *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390, 686 N.E.2d 1108, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 14} R.C. 3113.21(M) provided:

{¶ 15} "(3) Except as provided in division (M)(4) of this section, a court may not retroactively modify an obligor's duty to pay a delinquent support payment.

{¶ 16} "(4) A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." Am.Sub.S.B. No. 180, effective March 22, 2001, repealed R.C. 3113.21. The analogous provisions are now found in R.C. 3119.83 and 3119.84, respectively.

{¶ 17} R.C. 3119.83 states:

{¶ 18} "Except as provided in section 3119.84 of the Revised Code, a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment."

{¶ 19} R.C. 3119.84 states:

{¶ 20} "A court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered."

■ {¶ 21} "In other words, this statute provides that a court's modification of a delinquent support obligation may only be made retroactive to the date that the obligor was given notice that a petition to modify has been filed." *Hakhamaneshi v. Shabani*, 7th Dist. No. 00 CO 36, 2001-Ohio-3292, 2001 WL 1126644, at ¶ 13. See, also, *Tobens v. Brill* (1993), 89 Ohio App.3d 298, 303–304, 624 N.E.2d 265; *Hamilton v. Hamilton* (1995), 107 Ohio App.3d 132, 140, 667 N.E.2d 1256; *Gerlach v. Gerlach* (1997), 124 Ohio App.3d 246, 251, 705 N.E.2d 1287.

{¶ 22} In 1993, appellee requested, and was granted, a modification of his support obligations to reflect his unemployment income. The support obligation

was readjusted later that year when appellee returned to work. Neither the CSEA nor the trial court has any record of a request by appellee to modify his support obligation between 1993 and June 2001. The trial court, however, retroactively modified appellee's support obligation to account for all of the periods in which he was unemployed during this time. Since no request was made to the court, the trial court is barred, by statute, from retroactively modifying appellee's support obligation during this time.

{¶ 23} Accordingly, appellant's first assignment of error has merit.

{¶ 24} Appellant's second assignment of error states:

{¶ 25} "The trial court erred in *sua sponte* modifying Mr. Walker's child support obligation without Mr. Walker's invoking the continuing jurisdiction of the trial court under Civil Rule 75(J)."

{¶ 26} Following its determination that the arrearage should be retroactively modified, the trial court issued a ruling that a dual support order be used for future payments. Appellant asserts that since the hearing concerned only the arrearage payments, neither party invoked the continuing jurisdiction of the court to issue a ruling with respect to appellee's future support obligation.

{¶ 27} Civ.R. 75 applies to actions involving divorce and related proceedings. Civ.R. 75(J) states:

{¶ 28} "The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6. When the continuing jurisdiction of the court is invoked pursuant to this division, the discovery procedures set forth in Civ.R. 26 to 37 shall apply."

{¶ 29} Additionally, as indicated earlier, R.C. 3119.84 provides:

{¶ 30} "A court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due *after notice of a petition to modify the court support order has been given to each obligee* and to the obligor before a final order concerning the petition for modification is entered." (Emphasis added.)

{¶ 31} In this case, appellee never made a written motion to invoke the court's continuing jurisdiction, nor did he file a petition to modify the child support order. As a result of this, appellant was not given sufficient notice or sufficient opportunity to defend against a reduction in appellant's child-support obligation. This does not mean that we do not acknowledge that the trial court has jurisdiction over such matters. However, that jurisdiction must be properly *exercised.* See *In re Ohio Bur. of Support* (Nov. 6, 2001), 7th Dist. No. 00APO742, 2001 WL 1497073.

338

{¶ 32}   Accordingly, appellant's second assignment of error has merit.

{¶ 33}   Appellant's third assignment of error states:

{¶ 34}   "The trial court's order issuing alternative child-support orders has no basis in law."

{¶ 35}   The determination of this assignment of error lies in whether the issue of a dual support order was properly within the discretion of the trial court. The traditional approach is for the trial court to issue a single support order. When a substantial change in condition occurs that affects one of the parties, the party is to petition the court in order to obtain a modification in their support obligation.   Jefferson County, however, cites a local practice of issuing dual support orders in order to relieve parties of the need to request a review and adjustment of support obligations when their financial status is subject to intermittent, substantial variations.   In defense of its decision to issue an alternative support order, the trial court stated that there is no statutory or common-law prohibition against such orders.   The pertinent question then becomes whether the absence of a statutory prohibition to make such orders implies that they properly are within the discretion of the trial court.

{¶ 36}   R.C. 3119.02 defines an obligor's child-support obligation as follows:

{¶ 37}   "In any action in which a court child support order is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order, or when a child support enforcement agency determines the amount of child support that will be paid pursuant to an administrative child support order, the court or agency shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code."

{¶ 38}   Support obligations are calculated based on the parties' gross income. R.C. 3119.01(C)(7) defines "gross income" as follows:

{¶ 39}   " 'Gross income' means * * * the *total* of all earned and unearned income from all sources *during a calendar year,* whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; *unemployment insurance benefits;* disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans'

affairs or veterans' administration; spousal support actually received; and all other sources of income." (Emphasis added.)

{¶ 40} The alternative support order was designed by the trial court to meet several purposes pertaining to the facts of the current case. First, it reflects the inability of appellee to pay his support obligations during periods of unemployment. Second, it is designed to activate during any such periods in the future, eliminating the costly and slow process of filing with the court to have appellee's support obligations modified. As appellee has demonstrated, he has a tendency to waiver back and forth between periods of employment and unemployment; thus, this dual support order could ensure that appellee was paying only that amount which was commensurate with his current gross income.

{¶ 41} This practice of issuing dual support orders, although it may lend itself to promote judicial efficiency by reducing the continued involvement of the courts, is not in accordance with the intent of the Revised Code provision. R.C. 3119.01(7) clearly states that the basis for calculation for support obligations is to be the party's gross income over an entire *calendar year.* In other words, the objective is to, as reasonably as possible, determine a payment schedule that will result in roughly equal payments. It does not contemplate the possibility of payment fluctuations such as those contained in the dual support order.

{¶ 42} The Jefferson County practice of issuing dual support orders is defended as an attempt to set support obligations that, as reasonably as possible, approximate the current gross income of the parties. It does not, however, reflect the fact that R.C. 3119.01(7) also includes "any potential cash flow from any source" as a factor that must be considered. Other trial courts have addressed this by including the imputed income in cases where the party is voluntarily *underemployed. Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. See, also, *Fitzgerald v. Debrosse* (Mar. 20, 2000), 12th Dist. No. CA98–11–230, 2000 WL 307325; *Houts v. Houts* (1995), 99 Ohio App.3d 701, 651 N.E.2d 1031. In *Rock v. Cabral,* the Ohio Supreme Court determined that parents may engage in the profession of their choice; however, they are still obligated to pay their proportionate share of child support. Id. at 109, 616 N.E.2d 218. The court held:

{¶ 43} "[I]n calculating and awarding child support, a trial court must consider the 'potential income' as well as the gross income of a parent the court determines to be voluntarily unemployed or underemployed. The 'potential income' to be imputed to such parent for purposes of calculating his or her support obligation is to be determined based upon the amount the parent would have earned if he or she had been 'fully employed.' R.C. 3113.215(A)(5)(a). That amount is to be determined by the parent's employment potential and probable earnings based on the parent's recent work history, job qualifications, and the

prevailing job opportunities and salary levels in the community in which the parent resides. *Id.*" Id., 67 Ohio St.3d at 111, 616 N.E.2d 218.

{¶ 44} Based on the Supreme Court's ruling, a trial court's discretion with respect to issuing support orders has certain limitations. First, courts may follow the traditional approach and issue a support obligation and allow the parties to petition the court when there is a significant change in conditions. The alternative to this would be for the court to take into consideration a party's potential income and hold him or her accountable for his or her proportionate share of the child support based on this figure. In other words, when a party voluntarily chooses to be underemployed or unemployed, he or she is not permitted to escape his or her support obligations.

{¶ 45} In the present case, the trial court, in its attempt to approximate appellee's actual gross income, did not take into consideration appellee's potential income. Appellee states that it is the practice of his profession that he will experience intermittent periods of unemployment; however, it is appellee's choice to remain on unemployment during this time rather than seeking alternative employment or changing careers entirely. It is appellee's choice to remain in his chosen profession, but this choice does not relieve him of his obligation to provide for his children. The Supreme Court applied this rationale in *Rock.* It held that when one is qualified to engage in a profession and chooses not to seek other employment, one is still obligated to provide for one's children based on one's potential, not actual income. Applying this analysis, if appellee wishes to continue in his profession, he may do so; however, he is still obligated to pay support commensurate with his imputed or potential income.

{¶ 46} In sum, we find that dual support orders are inconsistent with statutory provisions and Ohio Supreme Court precedents governing child support. The trial court is to determine whether to impute income based on the above-cited precedent and to determine a single child support order based on income over the period of a calendar year.

{¶ 47} Accordingly, appellant's third assignment of error has merit.

{¶ 48} The judgment of the trial court is hereby reversed, and the cause is remanded for further proceedings according to law and consistent with this opinion.

Judgment reversed
and cause remanded.

VUKOVICH and WAITE, JJ., concur.