OPINION
{¶ 1} Plaintiff-appellant, Philip L. Fox ("appellant"), appeals the December 2, 2003 judgment of the Common Pleas Court, Domestic Relations Division, of Hancock County, Ohio, determining the amount of child support to be paid by Fox for his son, Austin Fox ("Austin").
 {¶ 2} Austin Fox was born to defendant-appellee, Debra K. Fox, n.k.a. Debra K. Ebert ("Debra"), and appellant on June 6, 1993. At that time, appellant and Debra had been married for six years, having married in June of 1987. Appellant and Debra petitioned for dissolution of their marriage on November 3, 1998, and a Decree of Dissolution was granted by the court on December 23, 1998.
 {¶ 3} The 1998 Decree incorporated a Separation Agreement, created between the parties, which governed, among other things, spousal support, child support, medical costs, and educational decisions and expenses. Specifically, as it pertains to this case, the parties agreed, "based upon the division of time between the parties," to a deviation in the calculation of child support, whereby appellant agreed to pay $250.00 per month. Initially, the Record indicates that the trial court failed to calculate child support pursuant to Ohio Revised Code §3119.02-3119.022. However, the Record indicates that based on the income of the parties, child support payments under the §3119.022 computation worksheet in 1998 would have totaled $313.76 a month, absent the deviation.
 {¶ 4} The Separation Agreement also contained Article 3, the "Shared Parenting Plan," and Article 4, "Visitation," which governed the division of parental responsibilities over Austin and visitation rights. The Agreement provided that Debra would be the residential parent, and also provided visitation rights for appellant. Visitation consisted of every other weekend, Wednesday nights during those weeks, and Tuesday and Thursday nights on the alternative weeks. Also included were special provisions governing holidays and summers.
 {¶ 5} On April 17, 2002 the Hancock County Child Support Enforcement Agency ("CSEA") filed a motion seeking to modify child support. As required by statute, the CSEA completed a Child Support Computation Worksheet for a shared parenting order, and calculated appellant's child support obligation as $456.68 dollars per month. The CSEA stated that "this amount does not reflect any adjustment which may be appropriate in view of any additional time Mr. Fox may spend with their child, pursuant to the terms of their Separation Agreement filed herein on December 23, 1998."
 {¶ 6} Thereafter, on August 16, 2002 appellant filed a Motion to Modify Shared Parenting Plan, which sought a two week on, two week off, parenting arrangement. On August 28, 2002 appellant filed a motion requesting that the court conduct an in camera interview of Austin pursuant to Ohio Revised Code §3109.04(B)(1), and the court conducted an interview on October 9, 2002. Subsequently, the court appointed counsel to serve as guardian ad litem on October 30, 2002.
 {¶ 7} After various continuances, the court conducted an evidentiary hearing on January 22, 2003 on the issues pertaining to child support and the shared parenting plan. The court noted that the parties stipulated to the facts necessary to make the calculation of child support pursuant to the Child Support Worksheet contained in § 3109.022, and asked the parties to submit proposed child support calculations. As to the shared parenting plan, the court found that appellant had failed to meet his burden of demonstrating changed circumstances as required by Ohio Revised Code § 3109.04(E)(1)(a), and thereafter filed a judgment entry to that effect on July 9, 2003. In the judgment entry, the court overruled the Motion to Modify Shared Parenting Plan, and ordered the existing shared parenting plan to continue.
 {¶ 8} However, on June 12, 2003 the court conducted mediation between the parties, wherein they agreed to a new parenting plan. Under the new plan, agreed to by the parties and ordered by the court on August 14, 2003, appellant has the right of parenting time with Austin on an alternating weekend basis from Thursday evenings until Monday morning, as well as every Tuesday evening. Modifications were also made to the rights of parenting time on holidays and over the summer for both parties.
 {¶ 9} After the parties submitted child support calculations and supporting legal memoranda, the court filed a judgment entry on December 2, 2003 granting the motion to modify child support and ordering appellant to pay child support in the amount of $456.68 per month. The number was calculated based on the parties' stipulated incomes of $39,401.58 for appellant and $38,401.58 for Debra. The court established the effective date of the modification as "the date on which the instant motion was filed, August 4, 2003."
 {¶ 10} This appeal followed and appellant now asserts four assignments of error. In addition, Debra has cross-appealed in this action, asserting one assignment of error. We will address these in turn.
 First Assignment of Error The trial court erred as a matter of law when it failed tocontinue the deviation in appellant's child support obligationafter appellant established that his current parenting time withthe child is equivalent to or exceeds the parenting time providedfor within the trial court's prior order granting a deviation.
 {¶ 11} Issues of child support are reviewed under an abuse-of-discretion standard. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390, 686 N.E.2d 1108, citing Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028. The term "abuse of discretion" connotes that the court's decision is unreasonable, arbitrary, or unconscionable; an abuse of discretion constitutes more than an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 12} When calculating an amount of child support to be paid by an obligor, the Revised Code requires that the court or agency making the determination do so "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02; see, also, Hurdelbrink v. Hurdelbrink (1989),45 Ohio App.3d 5. The Revised Code also provides the basic child support schedule, R.C. 3119.021, and the worksheet for parties subject to a shared parenting order, R.C. 3119.022. The Revised Code further creates a rebuttable presumption that the amount of child support calculated through the use of the basic child support schedule and the applicable worksheet is the correct amount of child support due. R.C. 3119.03.
 {¶ 13} A court may only modify an existing child support order if, after recalculating the amount of support required to be paid pursuant to the schedule and the applicable worksheet, the recalculated amount "is more than ten per cent greater than * * * the amount of child support required to be paid pursuant to the existing child support order." R.C. 3119.79. A difference of ten per cent from the amount of the current child support order constitutes a "change of circumstance" that requires the court to modify the child support order. R.C. 3119.79. DePalmo held that "[w]hen the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by [R.C. 3119.79]."DePalmo v. DePalmo (1997),78 Ohio St.3d 535, 540-541.[1]
 {¶ 14} Appellant first argues that there is not more than a ten per cent change between the amount of child support calculated at this time and the amount of child support that would have been calculated at the time of the divorce, absent the deviation. Therefore, appellant asserts that there has not been a change in circumstances that would allow the trial court to modify the existing child support order under R.C. 3119.79.
 {¶ 15} However, the Ohio Supreme Court established inDePalmo that the ten percent test is to be applied to the amount of the current order. "The ten percent difference applies to the change in the amount of the child support, not to the change in circumstances of the parents." DePalmo,78 Ohio St.3d at 540. Thus, appellant's reliance on the fact that his calculated child support under the worksheet at the time of the divorce would have been higher than the amount agreed to in the Separation Agreement is unfounded. If the amount of child support recalculated in accordance with R.C. 3119.021-3119.022 is more than ten percent greater or less than the amount of the previous child support order, there is a change in circumstances, and "the court shall require support in the amount set by the guidelines unless that amount would be unjust or inappropriate and not in the best interests of the child." Id.
 {¶ 16} Appellant argues next that the trial court erred in failing to continue the deviation the parties agreed to in the Separation Agreement. A court may deviate from the child support guidelines at its discretion, if, upon consideration of the statutory factors listed in R.C. 3119.23, it "determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet * * * would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. As noted, the worksheet calculations are "rebuttably presumed" to be the correct amount of child support. R.C. 3119.03. Thus, a party seeking to rebut the amount determined by the basic child support guidelines bears the burden of providing evidence demonstrating that the calculated award is unjust or inappropriate and not in the child's best interests. See R.C. 3119.22; Schultz v. Schultz (1996),110 Ohio App.3d 715.
 {¶ 17} The determination whether or not to deviate from this amount is within the discretion of the trial court. As this court recently noted, "[t]here is no authority whatsoever `for requiring a trial court to deviate from the child support guidelines merely because a deviation would be permissible or even desirable." Warner v. Warner, 3rd Dist. No. 14-03-10, 2003-Ohio-5132, at ¶ 20, 2003 WL 22229412, quoting Jones v.Jones (Dec. 17, 1999), 4th Dist. No. 99CA9, unreported, 1999 WL 1254809.
 {¶ 18} Appellant relies on the fact that the Separation Agreement provided that "based upon the division of time between the parties, the parties have agreed that a deviation in the calculation of child support is appropriate and in the best interest of the minor child." Appellant asserts that he is entitled to the deviation based on the amount of time spent with Austin. Indeed, the parties adopted a new shared parenting plan, contained in the court's August 14, 2003 "Consent Judgment Entry," whereby appellant's time with his son was increased. Since the parties agreed that appellant's increased time spent Austin justified a deviation in child support that was in the best interests of the child, and appellant's time with Austin has subsequently increased, appellant urges that the court decision not to grant a deviation was in error.
 {¶ 19} However, the agreement between the parties that a reduction in child support was in the best interests of the child has little authority. The ultimate goal of the law in this area is to provide for the best interests of the child. Marker,65 Ohio St.3d at 141. Through the complex statutory scheme governing calculations of child support set out in Chapter 3119 of the Revised Code, "the legislature has assigned the court to act as the child's watchdog in the matter of support." DePalmo,78 Ohio St.3d at 540, citing Martin v. Martin (1993),66 Ohio St.3d 110, 115, 609 N.E.2d 537, 541. Therefore, the Supreme Court concluded:
The law favors settlements. However, the difficult issue ofchild support may result in agreements that are suspect. Incustody battles, choices are made, and compromises as to childsupport may be reached for the sake of peace or as a result ofunequal bargaining power or economic pressures. The compromisesmay be in the best interests of the parents but not the child.
 DePalmo, 78 Ohio St.3d at 540. It is for this reason that statutorily determined amount is "rebuttably presumed" to be correct.
 {¶ 20} Appellant was therefore saddled with the burden of demonstrating to the trial court that he should be granted a deviation. However, the Ohio Supreme Court has held that a party to a shared parenting plan is not automatically entitled to a set-off or credit for time spent with Austin under the plan.Pauly, 80 Ohio St.3d at 388-90. Since Appellant put forth no other evidence demonstrating that he should be entitled to a deviation, and based upon the importance the legislature has placed on protecting the interests of the child, the trial court acted within its discretion in refusing to grant a deviation.
 {¶ 21} Therefore, we conclude that the trial court did not abuse its discretion when it refused to deviate from the amount calculated in accordance with the child support guidelines. Appellant's first assignment of error is overruled.
 {¶ 22} Appellant's second assignment of error coincides with the assignment of error asserted by Debra in her cross-appeal. For ease of discussion, we choose to address these assignments of error together. Appellant asserts:
Second Assignment of Error
 The trial court erred as a matter of law when it failed toorder that the new child support amount commence upon the filingof the judgment entry for equity would demand such a date basedupon the appellee's failure to allow the child supportenforcement agency to consider the deviation factors provided forwithin the decree of dissolution.
Debra's cross-appeal asserts:
The court erred in ordering the modification of support dateretroactive to August 4, 2003 in its order of December 2, 2003.
 {¶ 23} As noted previously, issues of child support are reviewed under an abuse of discretion standard. Pauly v. Pauly
(1997), 80 Ohio St.3d 386, 390.
 {¶ 24} R.C. 3119.83-3119.84 provide that a court may only retroactively modify an obligor's duty to pay child support if the payment "becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." R.C. 3119.84. It is well-settled in Ohio that this statute gives discretion to the lower court to make a child support order retroactive to the date the petition for modification was filed. Walker v. Walker (2003),151 Ohio App.3d 332, 336; State ex rel. Draiss v. Draiss (1990),70 Ohio App.3d 418, 420 (interpreting a prior version of R.C. 3119.84);Harter v. Harter (Feb. 26, 1998), Ohio App.3d Dist., 1998 WL 126249 (interpreting a prior version of R.C. 3119.84); Murphy v.Murphy (1984), 13 Ohio App.3d 388 (interpreting a prior version of R.C. 3119.84); Tobens v. Brill (1993), 89 Ohio App.3d 298
(interpreting a prior version of R.C. 3119.84).
 {¶ 25} In Tobens, this Court held that "if a court determines that a support order should be modified, it can only make the modification order effective from the date the motion for modification was filed." Tobens, 89 Ohio App.3d 298 at 304. This court later recognized that "[R.C. 3119.84][2]
permits, but does not require, a trial court to retroactively apply a modified child support order to the date the petition for modification was filed." Harter, 1998 WL 126249, at *8 (citingHamilton, 107 Ohio App.3d 132, 667 N.E.2d 1256).
 {¶ 26} The trial court's December 2, 2003 judgment entry made the order modifying child support effective "the date on which the instant motion was filed, August 4, 2003." The court clearly acted within its discretion by making the modification of child support retroactive to the date the motion for modification was made. R.C. 3119.84 specifically grants the trial court this authority. Thus, Appellant's second assignment of error is not well taken, and is overruled.
 {¶ 27} Debra, however, argues that the trial court was in error in setting the effective date at August 4, 2003. As stated previously, the Record in this case demonstrates that the CSEA filed its motion for child support modification on April 17, 2002. The December 2, 2003 judgment of the trial court is therefore contradictory.
 {¶ 28} As previously stated, it is clear from R.C. 3119.84
that the trial court was permitted to make its order modifying trial support retroactive to the date the motion was filed. However, it is not required to do so, as recognized by this court in Harter. Specifically, this court recognized that it is within the trial court's discretion to make the child support order retroactive to a date after the motion is filed. Bolenv. Bolen (June 5, 1995), 1995 WL 328103 (holding that a court did not abuse its discretion in making a child support order retroactive to the date of a hearing on the motion to modify child support).
 {¶ 29} However, we need not resolve the apparent discrepancy in the intentions of the trial court in this matter. Subsequent to the December 2, 2003 order, the court entered a new judgment revising the previous order. In a January 9, 2004 judgment entry the court ordered that "the effective date for the child support modification at issue herein be April 17, 2002." This is the date of the initial motion for modification of child support, and is thus within the discretion of the trial court.
 {¶ 30} Therefore, we hold that the court did not abuse its discretion in making the effective date for the modification of child support retroactive to the date CSEA filed the motion for modification. Based on the foregoing, Debra's cross-assignment of error is rendered moot, and appellant's second assignment of error is overruled.
 Third Assignment of Error The trial court erred as a matter of law in grantingattorney's fees to the guardian ad litem without a hearing uponthe reasonableness of said fees.
 {¶ 31} When reviewing a trial court's order regarding compensation to a guardian, an appellate court applies the abuse of discretion standard of review. Robbins v. Ginese (1994),93 Ohio App.3d 370, 372. Civ.R. 75(B)(2) provides for the appointment of a guardian to a child when it is essential to protect the interests of the child. The appointment is within the sound discretion of the trial court and the court has broad authority to tax as costs the guardian ad litem fees. Beatley v.Beatley, Delaware App. No. 03CAF02010, 2003-Ohio-4375, 2003 WL 21962540.
 {¶ 32} The trial court has an obligation to provide an opportunity for parties to be heard on motions pending before the court. Id. However, we find no authority compelling an evidentiary hearing in this circumstance, as appellant had ample opportunity to be heard on his objections to the guardian ad litem fees.
 {¶ 33} In Beatley, the Fifth District Court of Appeals found that a trial court did not abuse its discretion on ruling on a memorandum in opposition to guardian ad litem fees without holding an evidentiary hearing. The court found that the appellant in that case was given an opportunity to be heard on the issue: "Appellant filed a memorandum in opposition to the guardian's request for fees * * *. * * * The record reflects that the judge had ample information to determine the reasonableness of the guardian's fees * * *." Id. at ¶ 10.
 {¶ 34} In this case, appellant filed objections to the guardian ad litem's fees prior to the court's ruling on the motion for fees. Moreover, it is apparent from the Record that the court had a great deal of experience with the case and the parties. As in Beatley, "the record reflects that the judge had ample information to determine the reasonableness of the guardian's fees." Id. Therefore, we find that the court did not err in ruling on the motion based on the information in the pleadings and his experience with the case, without holding an evidentiary hearing.
 {¶ 35} Based on the foregoing, the third assignment of error is overruled.
 Fourth Assignment of Error The trial court erred as a matter of law when it failed togrant appellant's motion to modify the shared parenting plan andimplement an equal division of parenting time with the minorchild for said determination is against the manifest weight ofthe evidence.
 {¶ 36} A trial court ruling concerning a modification of parental rights should not be overturned absent an abuse of discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 85,630 N.E.2d 665. "Custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge['s] * * * decision must not be reversed absent an abuse of discretion." Davis v. Flickinger (1996),77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Thus, where a ruling on custody "is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v.Bechtol (1989), 49 Ohio St.3d 21, 21, 550 N.E.2d 178 (citingTrickey v. Trickey (1952), 158 Ohio St. 9, 106 N.E.2d 772).
 {¶ 37} A trial judge's discretion on custody matters is not absolute, however. When reviewing a motion to modify a shared parenting plan, a trial court is constrained by the limits of R.C. 3109.04(E)(1)(a):
The court shall not modify a prior decree allocating parentalrights and responsibilities for the care of children unless itfinds, based on facts that have arisen since the prior decree orthat were unknown to the court at the time of the prior decree,that a change has occurred in the circumstances of the child, thechild's residential parent, or either of the parents subject to ashared parenting decree, and that the modification is necessaryto serve the best interest of the child . . .
This provision prohibits the court from altering a prior order absent a showing that a change in circumstances has occurred and that modification of the previous custody order would be in the best interests of the child. Waggoner v. Waggoner (1996),111 Ohio App.3d 1, 5.
 {¶ 38} Additionally, the change in circumstances "must be a change of substance, not a slight or inconsequential change."Davis, 77 Ohio St.3d at 418. The legislature's intent in requiring a showing of changed circumstances was to "spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment." Wyss v. Wyss (1982), 3 Ohio App.2d 412,416, 445 N.E.2d 1153. Thus, the question of whether there are changed circumstances is a threshold inquiry that must be determined prior to examining whether a change in parental responsibility would be in the best interests of the child.Clark v. Smith (1998), 130 Ohio App.3d 648, 653,720 N.E.2d 973.
 {¶ 39} R.C. 3109.04(E)(2)(c) also permits the court to terminate a prior decree that contains a shared parenting plan "upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." However, this court has previously held that this provision is subject to the requirements of R.C.3109.04(E)(1)(a), and therefore, before any custody modification may be ordered, the party seeking a new custodial arrangement must demonstrate to the trial court that a change in circumstances has occurred. Patton v. Patton (2001),141 Ohio App.3d 691, 695.
 {¶ 40} Appellant asserts several factors allegedly demonstrating that a change of circumstances has occurred: (1) that both parents have now remarried and the new spouses "have been integrated into each of the parties homes," (2) that there is a "significant relationship" shared between the child and appellant's new wife, (3) changes which have occurred in the parenting time schedule that "[have] occurred based upon the needs and the age of the minor child." For the following reasons, we find that the trial court did not abuse its discretion in finding that appellant had failed to meet his burden under R.C.3109.04(E)(1)(A).
 {¶ 41} First, the mere fact that both parties have subsequently remarried is insufficient to demonstrate a change in circumstances. In Davis, the Ohio Supreme Court held that "[w]hile a new marriage, alone, usually does not constitute a sufficient change in circumstances, a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation," may constitute a change in circumstances. Davis,77 Ohio St.3d at 418.
 {¶ 42} In this case, although there is understandable friction between the parties and evidence demonstrating disagreements over vacation schedules, there is little evidence demonstrating that Debra ever attempted to deny appellant his visitation rights under the shared parenting plan. The record indicates one incident where Debra attempted to keep Austin over the holidays even though appellant was given custodial rights during that period. This, however, was not based upon hostility between the parties but on Austin's wishes, who had been forced to travel several years in a row and merely wished to spend that Christmas with his newborn brother.
 {¶ 43} Moreover, it is apparent from the record that appellant had exercised more parental rights and spent more time with the child that he was granted under the shared parenting plan. This extra time was agreed to by Debra. Therefore, there is no evidence that Debra was attempting to prevent appellant from exercising his visitation rights either before or after her new marriage. The trial court acted within its discretion in finding that this failed to demonstrate a sufficient change in circumstances.
 {¶ 44} Second, appellant's claim that Austin's relationship with appellant's new wife demonstrates a change in circumstances is not persuasive. As already indicated, a parent's remarriage alone is not enough to demonstrate a change in circumstances. Additionally, any change this factor brings is counterbalanced by the fact that Austin enjoys a significant relationship with Debra's new husband and their newborn child.
 {¶ 45} Finally, changes in the parenting schedule "based on the age and needs of the child" are insufficient to demonstrate a change in circumstances. Change in the child's age alone is not a sufficient factor. Davis, 77 Ohio St.3d at 420; Perz v. Perz
(1993), 85 Ohio App.3d 374, 619 N.E.2d 1094. If this were so, the intent of statute "to provide some stability to the custodial status of the child" would be thwarted, as either parent would file a motion for a change of custody every few years. Wyss,3 Ohio App.3d at 416.
 {¶ 46} Moreover, it is clear from the record that the parties had agreed to various changes in the parenting schedule in order to accommodate changes in the child's activities. These changes were mutually agreed to by the parties, as required by the Separation Agreement. Thus, it was within the trial court's discretion to find that the current parenting plan could sufficiently deal with the changing needs of the child, and that therefore there were no changed circumstances.
 {¶ 47} For these reasons, the fourth assignment of error is overruled, and the judgment of the Common Pleas Court, Domestic Division, of Hancock County, Ohio, as to each of the foregoing assignments of error, is affirmed.
Judgment affirmed.
Cupp and Bryant, JJ., concur.
[1] DePalmo examined the previous version of R.C. 3119.79, which was codified at R.C. 3113.215(B)(4). That section was repealed March 22, 2001, the date R.C. 3119.79 became effective.
[2] Although in Harter this court interpreted a prior version of the statute, codified at R.C. 3113.21(M)(4), the current version of R.C. 3119.84 is virtually identical. SeeWalker v. Walker (2003), 151 Ohio App.3d 322, 336,784 N.E.2d 127.