OPINION
{¶ 1} Defendant-appellant, David E. Zamos, II ("Zamos"), appeals the June 25, 2002 decision of the Portage County Court of Common Pleas, Juvenile Division, ordering plaintiff-appellee, Ann H. Zamos, n.k.a. Marn ("Marn"), to pay $6,927.38 to Zamos for back child support. Zamos contends that the trial court erred in determining the dates for which he was entitled to receive child support. For the reasons set forth below, the decision of the Portage County Court of Common Pleas, Juvenile Division, is reversed.
 {¶ 2} This appeal concerns the amount of arrearage Marn owes Zamos for the support of their child, David E. Zamos, II ("David"), born on March 9, 1983, and Zamos' claim that he should be credited for $800.00 in child support paid to Marn while David resided with Zamos from June 1999 until David graduated from high school on May 31, 2001. Prior to June 1999, David was living with his mother and step-father in Geauga County. In that month, delinquency charges were filed against David in the Juvenile Division of the Geauga County Court of Common Pleas for an offense occurring in his mother's house. The Geauga County Juvenile Court "found that David was, in effect, in his father's custody" and "residing with his father in Portage County." Accordingly, the Geauga County Juvenile Court transferred the case to the Juvenile Division of the Portage County Court of Common Pleas for disposition of the delinquency charges.
 {¶ 3} On June 3, 1999, Zamos filed a motion for change of custody and child support in the Domestic Relations Division of the Portage County Court of Common Pleas.[1] On July 29, 1999, the Portage County Domestic Relations Court gave Zamos "possession" of David and "noted that David would continue to reside with [Zamos]." On February 22, 2000, the Portage County Domestic Relations Court transferred to the Portage County Juvenile Court "the matter of the reallocation of parental rights and responsibilities of the minor child DAVID d.o.b. 03/09/83." In this way, all proceedings regarding David were brought before the Portage County Juvenile Court.[2]
 {¶ 4} The Portage County Juvenile Court made the following findings: "As part of the delinquency case disposition, David was ordered to attend school. The Kent School District would not enroll David without an order of custody. Accordingly, this court, on March 15, 2000, ordered that David be placed in his father's temporary custody so that he could be enrolled. Subsequent to that order, no other orders were made in the instant case and no hearings were requested by either party. David remained in his father's custody until his eighteenth birthday (March 9, 2001) and the parties stipulated that he then graduated from high school by May 31, 2001."
 {¶ 5} At a September 21, 2001 review hearing before the Portage County Juvenile Court, Zamos raised the unresolved issue of child support for David.[3] A magistrate of the Portage County Juvenile Court held a hearing on the matter and issued its decision on April 5, 2002. The magistrate found that Zamos was entitled to $6,927.38 in support for the period of time "from March 15, 2000 until May 31, 2001, a total of fourteen and one-half months." Zamos duly filed objections to the magistrate's decision, arguing, in part, that the magistrate had erred in determining the relevant period of time that Zamos was entitled to support. Zamos maintained that he was entitled to child support for a period of twenty-four months beginning in July 1999, when David began residing with him. The Juvenile Court only awarded Zamos child support for fourteen and one-half months after Zamos was awarded temporary custody of David.
 {¶ 6} On June 25, 2002, the trial court overruled Zamos' objections and adopted the decision of the magistrate. Zamos timely appeals this decision.
 {¶ 7} Zamos raises two assignments of error:
 {¶ 8} "[1.] The trial court erred in failing to credit appellant the $800 child support he paid to appellee while he had the minor child residing at his residence with appellant from June, 1999 until his maturity and graduation from high school.
 {¶ 9} "[2.] The trial court erred by not granting appellant child support from June, 1999 rather than using the March, 2000 date for the calculation of child support due appellant."
 {¶ 10} Both Zamos' assignments of error turn on the question of when Zamos became entitled to receive child support from Marn for David. Under his first assignment of error, Zamos argues that he should be credited for the child support he paid to Marn from June 1999 to March 2000 due to the fact that David was residing with him. Under the second assignment of error, Zamos argues that he is entitled to support from Marn for those ten months before he was awarded formal custody.
 {¶ 11} A trial court's decision regarding child support should not be disturbed on appeal absent an abuse of discretion.Booth v. Booth (1989), 44 Ohio St.3d 142, 144; Mauerman v.Mauerman, 11th Dist. No. 2002-T-0049, 2003-Ohio-3876, at ¶ 18 (citation omitted). "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quotingState v. Adams (1980), 62 Ohio St.2d 151, 157. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court," but "should be guided by a presumption that the findings of a trial court are correct." In re Jane Doe I (1991),57 Ohio St.3d 135, 137-138, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
 {¶ 12} The trial court determined that March 15, 2000, the date "of the actual transfer of `custody'" of David to Zamos from Marn, was the "appropriate time period for the determination of Child Support." The court explained its reasoning thus: "This Court [g]ranted Mr. Zamos Temporary Custody of his son, David E. Zamos, II, in a Delinquency matter on March 15, 2000. Previous to that date, the child, David E. Zamos, II, was in the Legal Custody of his mother, Ann H. Marn, but the child's father, David E. Zamos, was given `possession' of the child by Court Order on July 29, 1999. This Court is unsure of the legal significance of a Domestic Relations Court granting `possession' of the child by Court Order. The Legal Custody of the child remained with the child's mother, Ms Ann Marn."
 {¶ 13} The general rule in Ohio is that when a court modifies a child support award, that modification is made retroactive to the date on which the motion to modify the award is made.Mauerman, 2003-Ohio-3876, at ¶ 19; Torbeck v. Torbeck (Sept. 28, 2001), 1st Dist. No. C-010022, 2001 Ohio App. LEXIS 4371, at *9; Sterns v. Sterns (Jan. 27, 2000), 8th Dist. No. 76615, 2000 Ohio App. LEXIS 216, at *2 (citations omitted); Sprankle v.Sprankle (Mar. 25, 1998), 9th Dist. No. 2678-M, 1998 Ohio App. LEXIS 1141, at *5 (citations omitted); State ex rel. Draiss v.Draiss (1990), 70 Ohio App.3d 418, 421. The general rule is based on equitable principles in recognition of "the substantial time it frequently takes to dispose of motions to modify child support obligations." Hamilton v. Hamilton (1995),107 Ohio App.3d 132, 139-140, citing Murphy v. Murphy (1984),13 Ohio App.3d 388, 389. "[A]bsent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested." Draiss,70 Ohio App.3d at 421; accord Torbeck, 2001 Ohio App. LEXIS 4371, at *9; Hamilton, 107 Ohio App.3d at 139; Wayco v. Wayco (Mar. 8, 1999), 5th Dist. No. 1998-CA-00279, 1999 Ohio App. LEXIS 1546, at *6; Havre v. Havre (Nov. 29, 1996), 11th Dist. No. 96-P-0058, 1996 Ohio App. LEXIS 5407, at *12-*13 (citation omitted); Oatey v. Oatey (Apr. 25, 1996), 8th Dist. Nos. 67809 and 67973, 1996 Ohio App. LEXIS 1685, *41-*42; but, see, Pacurarv. Pacurar (1999), 132 Ohio App.3d 787, 790 (not followingDraiss). "If the trial court decides in its discretion that the order should not be retroactive to the date of the motion, it must state the reasons for that decision." Havre,
1996 Ohio App. LEXIS 5407, at *13, citing Dzeba v. Dzeba (Dec. 1, 1993), 9th Dist. No. 16225, 1993 Ohio App. LEXIS 5827, at *10.
 {¶ 14} In the present case, Zamos filed his initial motion for change of custody and child support on June 3, 1999. The trial court did not award him child support prior to March 15, 2000, because, until that date, he did not have legal custody of David. The court erred in its determination that Zamos was not entitled to receive child support until he was awarded formal custody of David.
 {¶ 15} Although "possession" does not have a technical meaning for the purposes of child custody and support proceedings, it is evident that David was residing with Zamos at least as early as June 1999, when Marn filed delinquency charges against David. Pursuant to R.C. 2151.231, "[t]he parent, guardian, or custodian of a child, [or] the person with whom a child resides" may request the appropriate "court to issue an order requiring a parent of the child to pay an amount for the support of the child." There is no requirement that the parent or person with whom a child resides first obtain "legal custody" as a prerequisite to seeking support. Accordingly, we hold that the trial court acted arbitrarily and, therefore, abused its discretion when it decided that Zamos could not be entitled to receive child support until he was granted formal custody of David. Booth, 44 Ohio St.2d at 144; Mauerman, 2003-Ohio-3876, at ¶ 18.
 {¶ 16} The present case is a good example of the "substantial time" it takes to resolve child support motions that justifies the retroactive modification of child support awards. Zamos filed his motion for change of custody and child support in June 1999, after David had begun to reside with him. Ten months passed before a court awarded Zamos actual custody, and even then Zamos was only given temporary, rather than permanent, custody. During this time, Zamos continued to pay child support to Marn. The grant of temporary custody notwithstanding, David resided with Zamos until his emancipation in May 2001. At this point, Zamos had still not received any child support from Marn. A hearing on child support was finally held in March 2002, almost three years after Zamos filed his initial motion for support. In this situation, where there is little dispute regarding the underlying facts, equity demands that the court fashion an award that conforms to the actual facts of the case.
 {¶ 17} While a court is not required in every instance to make modifications to child support awards retroactive, a court must have a valid reason, consistent with law and equity, when it chooses not to do so. Accordingly, we reverse the decision of the trial court and remand this case to recalculate the amount of additional child support arrearage owed to Zamos. In recalculating the amount of arrearage, the trial court should consider the period of time during which David resided with Zamos prior to the date on which Zamos obtained formal custody of David. The decision of Portage County Court of Common Pleas, Juvenile Division, is reversed and this cause is remanded for further proceedings consistent with this opinion.
Ford, P.J., concurs.
Christley, J., dissents with a dissenting opinion.
[1] The Portage County Domestic Relations Court had granted Zamos and Marn's divorce and had originally awarded custody of David to Marn.
[2] Pursuant to R.C. 2151.23(D), a juvenile court "has jurisdiction to hear and determine all matters as to custody and support of children duly certified by the court of common pleas to the juvenile court after a divorce decree has been granted, including jurisdiction to modify the judgment and decree of the court of common pleas as the same relate to the custody and support of children."
[3] On April 25, 2000, a month after being granted temporary custody of David, Zamos renewed his motion for child support in the Portage County Domestic Relations Court. The Domestic Relations Court ruled that the Juvenile Court's jurisdiction should include "all issues" regarding David. Apparently, confusion regarding which court had jurisdiction over the issue of child support persisted. After Zamos raised the issue again before the Juvenile Court on September 21, 2001, the Juvenile Court magistrate ruled that he would exercise jurisdiction over the issue of child support only if Zamos and Marn consented to his exercise of jurisdiction. Both parties agreed to have the matter resolved in Juvenile Court.