DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal is from the August 23, 2004 judgment of the Williams County Court of Common Pleas, Domestic Relations Division, which modified the shared parenting plan between the parties. Upon consideration of the assignments of error, we affirm the decision of the lower court in part and reverse in part. Appellant, Timothy Sheridan, asserts the following assignments of error on appeal:
 {¶ 2} "FIRST ASSIGNMENT OF ERROR
 {¶ 3} "The Trial Court Erred in Injecting His Personal Beliefs and Opinions as Iron Clad Evidence, Precluding Testimony in the Presentation of Evidence by the Father/Appellant and Precluding Testimony and Consideration of Evidence of the Home Investigation and Finding That Had Been Ordered by this Court and Proclaiming, in an Interim Ruling in the Middle of the Case, That His Personal Beliefs and Opinions Were Beyond Question and Dispositive of the Issues Pending in a Decision Before the Court as to Whether or Not to Terminate a Shared Parenting Plan.
 {¶ 4} "SECOND ASSIGNMENT OF ERROR
 {¶ 5} "The Trial Court erred in Not Ordering the Plaintiff/Appellee to Pay Child Support for Nearly One Year after the Court, in an Ex Parte Order, Modified the Shared Parenting Plan to an Only Every Other Weekend Visitation on the Part of the Plaintiff/Appellee."
 {¶ 6} The parties were divorced in November 2002. At that time, the court ordered the parties to comply with a shared parenting plan regarding their minor child. Appellant was designated as the residential parent during the school year. Appellee had visitation on alternate weekends and for a few designated hours during the week. During the summer, the child resided primarily with the mother, with the father having visitation on alternate weekends and for a few designated hours during the week. The parents equally divided the holiday visitations.
 {¶ 7} On September 30, 2003, appellee moved for an immediate temporary order reallocating the parenting times between the parties because of appellee's need to relocate to Chicago, Illinois. She requested alternate weekend visitation privileges, which was granted ex parte by the court on that same day, effective October 10, 2003. On
 {¶ 8} October 6, 2003, appellant moved to terminate the shared parenting plan and give appellant primary parental rights and responsibilities.
 {¶ 9} Following a hearing on December 1, 2003, the court continued its temporary order until appellee had moved and the court's home investigation was complete. A hearing was held on June 28 and 29, 2004, regarding the shared parenting plan and the following evidence was presented.
 {¶ 10} Appellee testified that she moved to a condominium unit in Chicago, Illinois in December 2003. Her current income is $40,000 a year. She believed that her current standard of living was a little less than when she lived in Bryan, Ohio. Appellee described the neighborhood as being under transition, with the neighborhood consisting of generally lower middle-class working people. However, she acknowledged that there is some subsidized housing. The other condominium owners in her units are generally young, white-collar professionals who do not have any children. While she realizes that her neighborhood is not the best community in Chicago, she also thinks that it is not the worst. She does not feel that it is an unsafe place for her six-year old son.
 {¶ 11} Her son had been visiting every other weekend since December 2003. She had been doing all the transportation, picking up the child at 7:00 p.m. on Friday and driving him back to Bryan, Ohio by 7:00 p.m. on Sunday. The drive generally took three and one-half to four and one-half hours each way, but was longer in bad weather. While she had been providing all the transportation, appellee believes that appellant should share the burden of the transportation.
 {¶ 12} Appellee believes that the child enjoyed the ride and his alternate weekend visits. The child never expressed regret over missing an event at home or any problem with the other children at her home. She did not feel that the child would confide in appellant or his family that he wanted to see appellee more because the child knows that they do not like her. Appellee has provided for daycare in the future, if necessary, at a YMCA to which she belongs near her workplace.
 {¶ 13} Appellee had no objection to the child continuing to reside primarily with appellant during the school year. She wanted the every other weekend visitation to continue because her son is young enough that it would not interfere with his social life. Furthermore, appellee believes that it was in the child's best interest, at his current age, to live with her during most of the summer so that he would have more time to be with her in her home. She believes that the child would not be deprived of any activities because he could enroll in activities in Chicago similar to those in Bryan, Ohio.
 {¶ 14} She believes that the major issue she faces with appellant is his belief that appellee cannot make any decisions on her own regarding the child. They have had disagreements about the child attending certain day camps or other events.
 {¶ 15} Appellant testified that he is very concerned about the safety of the child while he resides in Chicago. Appellant visited appellee's neighborhood and YMCA on June 12, 2004. He observed that appellee's neighborhood is very urban, has no yards, and has cars lining both sides of the streets. The area consisted of five or six blocks of tenement buildings built in the 1920s. Appellee's street appears to be completed as far as any renovations are concerned. Two streets away, however, renovations are not completed. Windows are boarded up. Men are hanging out on the street corners and alleys. He did not see any children at 10:00 a.m. In total, appellant believed that appellee's neighborhood did not appear to be a desirable area for raising a child.
 {¶ 16} Upon further investigation, appellant discovered that appellee lives in an area still considered as part of South Chicago. He agreed with the court investigator that there was a safety concern with the child living in this area. Based upon a 2002 statistical crime report he submitted into evidence, appellant believes that the crime rate is alarming. The report indicated that within the 16-square block area that surrounds appellee's neighborhood, 21 murders occurred in 2002.
 {¶ 17} Appellant opposed the alternate weekend visitations for several reasons. First, he testified that the child has only stated on two occasions that he wanted to visit appellee. Second, the child takes about three days to recover from the traveling and unstable sleeping schedule he keeps while in Chicago. Even if the driving were divided between the parents, the child would still have to travel the entire distance. Third, the child has missed numerous social events with his peers. He missed the birthday parties for his best friends. He has missed parades, school events, Sunday School, his school's open house, and sporting practices and games. Appellee has been unwilling in the past to accommodate the child's activities and stay in Bryan, Ohio on a Saturday so that the child would not miss events that occurred on the weekend.
 {¶ 18} Appellant also testified that he does not think that their child realizes yet that when he stays with his mother in Chicago during the summer that he will be spending most of his time in daycare. Until 2004, appellee has been unemployed or working part-time with a flexible schedule. However, while with appellant, the child is cared for by his grandmother after school or during the summer when appellant is working. While appellant had planned the next summer to enroll the child in the local YMCA for three mornings a week, he also provided for the child to be with his grandparents or a family member the rest of the time. He believed that the local YMCA was more acceptable because, unlike the Chicago YMCA, the child would be attending with his friends and peers that he already knows from the community.
 {¶ 19} Even though the visitation schedule changed on September 30, 2002, to every other weekend, appellee's support obligation did not. Appellant has not received any support from appellee. His current gross wages are $911 a week, $42,931 a year.
 {¶ 20} Appellant believes that the shared parenting system is not practical between appellant and appellee not only because of the distance, but also because of their communication problems. Appellant asserted that while he has provided appellee with information about all of the decisions he has had to make regarding the child, appellee never follows through on the information. Furthermore, she has failed to reciprocate by providing such information. For example, she enrolled the child in a YMCA program without consulting with appellant. She did not send him information so that he would know the child's schedule and be included in parental activities. She also failed to notify appellant regarding issues that arose regarding the child while at the Chicago YMCA.
 {¶ 21} Therefore, appellant was requesting that he be named as the residential parent. Setting aside his safety concerns, appellant believed that the court's visitation guidelines should be followed regarding visitation over 150 miles. Appellant's goal was to ensure that visitation was with appellee, not Chicago. He had no objection to appellee visiting with the child in Bryan.
 {¶ 22} Patrick Tusko, a family friend, and appellant's mother both testified that appellant is a good father and that he has tailored his life around his child. Appellant's mother also testified that she did not think that every other weekend visitation was appropriate for the child. During the time that he had been doing it, he had been ill more often, was especially quiet and reserved just before leaving for the weekend, and appeared grateful to be home at the end of the trip. Appellant's mother also testified that the child told her that he was the last one to go to bed at night while he was in Chicago. The mother believed that this explained why the child took so long to recover from the weekend visits and why he became ill more frequently.
 {¶ 23} On August 23, 2004, the court denied appellant's motion to terminate the shared parenting plan. The court modified the shared parenting plan and entered the following order: the child shall reside primarily with the father during the school year, except that he is to reside with the mother on Labor Day weekend (Sept. 3-6, 2004); during Parent-Teacher Conferences (Oct. 27-31, 2004), Thanksgiving (Nov. 23-28, 2004); Christmas/New Year's Holiday (Dec. 26, 2004-Jan. 2, 2005); Teacher's Work Day (Feb. 18-21, 2005); Spring Break (March 19-26, 2005); April 22-24, 2005; and Memorial Day (May 27-30, 2005). This scheme continues each year thereafter so that the mother would be the residential parent during any three- and four-day holiday weekends. During the summer, the child was to reside with the father for the first half of the summer and with the mother for the second half, with one mid-term weekend during each period being spent with the non-residential parent. Transfer of the child between parents was to occur at South Bend, Indiana at 6:00 p.m. The mother was ordered to pay child support effective September 1, 2004.
 {¶ 24} In his first assignment of error, appellant raises several objections to the shared parenting order. First, he objects to the court's statements regarding consideration of the safety of appellee's neighborhood. Appellant contends that the court should not have gone outside of the evidence and considered his own familiarity with the safety of appellee's neighborhood. Rather, he argues, the court was confined to the factors of R.C. 3109.04(F)(2) to determine whether shared parenting would be in the best interest of the child based upon the evidence presented. Had he done so, appellant argues, the court would have found that appellee's neighborhood is a dangerous place for the child to live. Appellee argues that there was nothing wrong with the fact that the trial court was influenced by its own observations. Alternatively, appellee argues that any such error was merely harmless.
 {¶ 25} Generally, the trial court exercises discretionary powers in making custody determinations, subject to the requirements of R.C. 3109.04. Therefore, the decision of the court will not be overturned on appeal unless the court abused its discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74. An abuse of discretion is more than an error in law or judgment. The court abuses its discretion only if it renders an unreasonable, arbitrary, or unconscionable decision. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} When the safety issue was raised during appellant's testimony, the judge stated that he was going to make an interim ruling. The judge stated that he had traveled through the area where appellee resides 20-to-25 times a year while traveling to and from Chicago. Therefore, based upon his own experience and his familiarity with the area, he was not going to consider the safety questions raised in the home study. The judge noted that the investigator was directed to evaluate the home environment, not the residential environment. Therefore, the court would not consider the investigator's comments regarding the nature of the neighborhood. When appellant objected to the judge's reliance upon facts outside the evidence and exclusion of part of the investigator's report, the court responded, "The Court knows what the Court knows." Appellant continued to object and the judge indicated that it noted the objection.
 {¶ 27} We find that the consideration of facts outside the evidence was an abuse of discretion. The trial court judge should not have taken judicial notice of his own observations. Because the safety of the neighborhood is a material issue of dispute in this case, Evid.R. 201(B) does not permit the use of judicial notice to resolve the issue. This error was not harmless since this preliminary ruling was an underlying basis for the court's final determination regarding visitation.
 {¶ 28} Furthermore, R.C. 3109.04(C) provides that the court may order an investigation of the parties before making a determination of the best interest of the child. An investigation can be made "* * * as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *" and the court may also "order the parents and their minor children to submit to medical, psychological, and psychiatric examinations." While the statute does not specifically require an investigation of the safety of the neighborhood in which the child would reside, the court is free to consider all relevant information when making the best interest determination. The safety and welfare of a child is certainly relevant to the best interest determination. Therefore, we find that the trial court abused its discretion by excluding the investigator's comments from his consideration.
 {¶ 29} Second, appellant argues that the court abused its discretion in finding that it would be in the child's best interest to spend every holiday with appellee. We agree. The court's standard long distance companion schedule provides that holidays and summer vacation should be divided equally between the parents. In this case, the court appropriately divided the summer custody between the parents. However, the court apportioned virtually all of the holidays to appellee.
 {¶ 30} Appellee contends that appellant still has some holidays; namely, Martin Luther King Day, President's Day, Fourth of July, and Halloween. Furthermore, she argues that appellant would have the child during other days off school, such as when the school cancels classes because of weather or teacher workdays. Appellee fails to acknowledge, however, that these additional days off school would not necessarily coordinate with appellant's time off work.
 {¶ 31} More importantly, the child would never be able to celebrate with appellant any of the holidays the family normally celebrated on the day the holiday is typically celebrated. Such a plan would not be beneficial to the child and is patently unfair to appellant. Thus, the court's order constitutes an abuse of discretion. While appellee's companionship with the child in her home is limited under the court's standard schedule, that is a natural consequence of her move to Chicago.
 {¶ 32} Third, appellant argues that the court set up an arbitrary transportation time of 6:00 p.m., which is impossible under appellant's work schedule. Appellee argues that appellant has great flexibility in his work schedule, as demonstrated by evidence presented at the hearing regarding appellant's extensive involvement in the child's school and extra-curricular activities. Therefore, she argues that leaving work early on a once-a-month basis is not a hardship for appellant.
 {¶ 33} We agree with appellee. Because the companionship visits are limited in number and the child is too young to be traveling late at night, requiring appellant to leave work early only once a month is not an abuse of the court's discretion.
 {¶ 34} Fourth, appellant argues that continuing the shared parenting plan is not in the best interest of the child because of appellee's change in lifestyle. He contends that appellee will not cooperate in making medical decisions for the child, that appellant and appellee are "diabolically opposed as to the raising of their child;" and that this move will substantially alter the quality of the child's life in a detrimental way because appellee lives a lesbian lifestyle and chooses to live in South Chicago. We find that this argument lacks merit as well.
 {¶ 35} Certainly, the child would benefit from joint parental decision-making and cooperation between his parents. However, it is clear from the testimony that appellant and appellee are unable to work together regarding their child's welfare. Any type of child custody order will unavoidably alter the child's life. However, both parents must have the opportunity to develop a relationship with their child. We find that the court did not abuse its discretion by continuing the shared parenting arrangement.
 {¶ 36} Appellant's first assignment of error is well-taken in part. We find that the court erred in taking judicial notice of the safety of appellee's neighborhood and by refusing to consider the court investigator's concerns regarding the neighborhood. The court also abused its discretion by deviating from the court's standard companionship schedule in such a manner that the child would rarely celebrate a holiday with appellant.
 {¶ 37} In his second assignment of error, appellant argues that the trial court erred by failing to order appellee to pay child support until nearly one year after the court, in an ex parte order, modified the shared parenting plan to allow every other weekend visitation with appellee. Appellant argues that the child support should have started as of the date of the filing of the motion to modify the shared parenting plan.
 {¶ 38} The trial court's decision to impose a child support obligation upon appellee as of September 1, 2004, was a discretionary decision. Therefore, it will not be disturbed on appeal unless appellant can demonstrate that the court abused its discretion. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390, citing Booth v. Booth (1989), 44 Ohio St. 3d 142,144.
 {¶ 39} Appellant argues that the trial court was obligated to sua sponte re-evaluate the child support order when the court modified the amount of time the child spends with each parent. He relies upon the requirement of R.C. 3119.24(A) that the court cannot deviate from the child support guidelines unless there are extraordinary circumstances. He believes that the trial court recognized its duty under R.C. 3119.24(A) when it ordered the parties on December 17, 2003, to provide the relevant information regarding their income and expenses to the child support enforcement agency in order to compute their child support obligations. Appellant asserts that the filing of the motion to terminate the shared parenting plan and name him as residential parent reflected his view that appellee should have been paying child support as early as October 6, 2003. At least, appellant argues, the child support order should have been effective as of April 7, 2004, when he moved to have the issue set for hearing.
 {¶ 40} Ohio appellate courts have generally held that the trial court should make a order altering a child support obligation effective as of the date the opposing party had notice of the request to alter child support. Murphy v. Murphy (1984), 13 Ohio App.3d 388, 389; Fox v.Fox, 3d Dist. App. No. 5-03-42, 2004-Ohio-3344, at ¶ 24-26; Zamos v.Zamos, 11th Dist. App. No. 2002-P-0085, 2004-Ohio-2310, at ¶ 13;Jurewicz v. Rice, 9th Dist. App. No. 3190-M, at 1, 2001-Ohio-1767;Torbeck v. Torbeck, (Sept. 28, 2001), 1st Dist. App. No. C-010022, at 9;Wayco v. Wayco (1999), 5th Dist. App. No. 1998-CA0-0279, at 6-7; andBrennan v. Brennan (1996), 10th Dist. App. No. 95APF10-1288, at 3. If not, the court must provide reasons for choosing another date. Zamos v.Zamos, supra. This court has followed the general rule. Hamilton v.Hamilton (Oct. 27, 1995), 107 Ohio App.3d 132, 139 and Gonzalez v.Gonzalez, 6th Dist. App. No. WD-02-074, 2003-Ohio-5187, at ¶ 25.
 {¶ 41} In this case, appellant never filed a motion to modify child support. He filed only a motion to terminate the shared parenting order. However, appellee was on notice after appellant's April 7, 2004 motion to set the issue of child support for hearing that the court would consider modifying her child support obligation. Therefore, applying the general rule, the court should have made the child support obligation retroactive to April 7, 2004, unless there were extenuating circumstances. Since the court did not explain why it did not follow the general rule, we find that the trial court abused its discretion in this case. Appellant's second assignment of error is well-taken.
 {¶ 42} Having found that the trial court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Williams County Court of Common Pleas, Domestic Relations Division, is reversed. This matter is remanded to the trial court for implementation of a shared parenting plan consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT REVERSED.
Handwork, J., Singer, P.J., Parish, J., concur.