[Cite as *Huth v. Huth*, 2019-Ohio-2970.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| KRESNT D. HUTH, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0084** |
| ROBERT J. HUTH, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2007 DR 00548.

Judgment: Affirmed in part and reversed in part; remanded.

*Eric R. Fink*, 11 River Street, Kent, OH 44240 (For Plaintiff-Appellee).

*David M. Leneghan* and *K. Scott Carter*, 200 Treeworth Boulevard, Suite 200, Broadview Heights, OH 44147 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Robert J. Huth, appeals from a judgment entered by the Portage County Court of Common Pleas, Domestic Relations Division, on October 10, 2018. The judgment is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

{¶2} This matter originated in the trial court as a divorce action between appellant ("Father") and appellee, Kresnt D. Huth ("Mother"), in 2007. The parties were granted a divorce on June 3, 2008, and the trial court implemented a Shared Parenting Plan for the

three minor children born during the marriage. With regard to child support, the Shared Parenting Plan provided:

> Father shall pay to Mother for support of the minor children the sum of $300.00 per month, plus 2% processing charge commencing April 25, 2008. An upward deviation in child support is warranted because of the time the children spend with each parent and to equalize the parties' income. If not for the upward deviation in child support, Father shall pay to Mother for the support of the minor children the sum of $78.87 per month plus 2% processing charge for a total of $80.45 per month pursuant to the attached Child Support Calculation Worksheet.

The Shared Parenting Plan additionally provided that "all cost [sic] of school lunches, school fees, extracurricular activities, sports equipment, lessons, school supplies, yearbooks, school clothes, etc. shall be split equally between the parties."

{¶3} Father failed to pay child support to Mother, which resulted in contempt proceedings. In 2010, Father filed a Motion for Modification of Child Support "based upon a change in the parties' financial conditions." The parties entered into an Agreed Judgment Entry on July 14, 2010, in which Mother agreed to waive the past due child support, and Father's current child support obligation was deviated to zero. Father remained obligated to pay an amount towards the children's medical care.

{¶4} On July 21, 2014, Father filed a Motion for Reallocation of Parental Rights and Responsibilities, in which he requested to be named residential parent of two of the parties' three children. In a Motion for In-Camera Interview, Father stated that "time is of the essence in this matter as [Father] will be relocating to the State of Florida and desires to enroll the children in school in a timely fashion if possible for the upcoming school year[.]"

2

{¶5} On August 28, 2015, Mother filed a Motion to Modify Child Support based upon a change in circumstances. "Specifically," she stated, "Father has changed addresses, is no longer evenly dividing any expenses, and therefore has not paid any child support in over six (6) months."

{¶6} A hearing was held February 3, 2016, a transcript of which has not been provided on appeal. It appears undisputed, however, that Father did not attend the hearing. Father's counsel appeared, as did Mother and her counsel.

{¶7} On February 24, 2016, the trial court issued a Judgment Entry, in which it declared the parties had agreed to be bound by the attached Amended Shared Parenting Plan and had agreed to dismiss all outstanding motions. According to the Amended Shared Parenting Plan, Father was to pay Mother $600.00 to settle her claim for prior child support and a deviated amount of $625.00 per month, commencing retroactively on November 1, 2015.

{¶8} Father again failed to pay child support, and contempt proceedings were initiated in 2017.

{¶9} On February 12, 2018, Father filed a Motion to Modify Child Support, alleging a change of circumstances: "Before [the February 24, 2016] Order the parties had equal parenting time, but Defendant moved to Florida. Defendant has returned from Florida and the parties are back implementing equal parenting time."

{¶10} The trial court held an evidentiary hearing on April 9, 2018, a transcript of which has not been provided on appeal. It is apparent from the record, however, that Father disputed that the February 24, 2016 order was valid because he had not agreed to the Amended Shared Parenting Plan.

{¶11} By judgment entry issued June 13, 2018, the trial court vacated its February 24, 2016 order and the Amended Shared Parenting Plan. The court explained as follows:

> [At the hearing on April 9, 2018,] the parties stipulated as to the calculations and accounting performed by CSEA regarding payments and arrearages subject to and conditioned upon a finding that the order of February 24, 2016, is a valid and binding order. [Father] disputed that the February order is valid.
>
> The first witness, Ms. Judy Rice from CSEA, testified that [Father] contacted CSEA on July 26, 2016; August 19, 2016; October 20, 2016; and December 5, 2016. On each occasion [Father] denied that there was any child support order.
>
> There is no dispute that a hearing was held on February 3, 2016. [Mother] and counsel were present and counsel for [Father] was present. [Father] testified that he knew of the hearing, but knowingly elected not to attend that hearing.
>
> The parties had been following a Shared Parenting Plan. Under the terms of that Shared Parenting Plan, neither party was ordered to pay child support. [Father], however, indicated that he was moving to Florida and the Shared Parenting Plan would be impossible to follow. The purpose of the February 3, 2016 hearing was to establish child support.
>
> [Father] has now returned to the area and wishes to resume operating under a Shared Parenting Plan where he would pay no child support. A new Shared Parenting Plan has not been adopted by the Court.
>
> There is no dispute that [Father] owes some child support for the time he was living in Florida. He has, however, not paid any child support. Although the order of February 24, 2016 was called an Agreed Entry, it was not signed by [Father] or his counsel. The Court, with reluctance, feels obligated to vacate that February 24, 2016 order.
>
> * * * Counsel for the parties are ordered to contact the Court forthwith and schedule a hearing date to establish child support. The start date for said order shall be February 1, 2016.

{¶12} An evidentiary hearing was held August 13, 2018, at which both Mother and Father testified. Both parties were represented by counsel. A representative of the Child

4

Support Enforcement Agency ("CSEA") was also present. The trial court permitted the parties to file briefs in lieu of closing arguments.

{¶13} On October 10, 2018, the trial court issued a judgment entry, in which it stated it was ruling on Mother's August 28, 2015 Motion to Modify Child Support because the February 24, 2016 "agreed" entry had been vacated.

{¶14} The trial court found that Father's move to Florida had "resulted in a de facto termination of the Shared Parenting Plan"; the three children reside full time with Mother, who is employed and has been paying all of the children's medical expenses, insurance, and day-to-day living expenses; Father visits the children sporadically; Father voluntarily elects to remain underemployed and has only ever made one child support payment.

{¶15} The trial court determined Mother's annual income to be $38,000.00 and imputed an annual income to Father in the amount of $54,154.30. The court ordered Father to pay child support in the sum of $992.75 per month when health insurance is provided, and $789.60 plus $221.13 in medical support per month when health insurance is not provided. The modified child support order was ordered effective, retroactively, from September 1, 2015.

{¶16} All other pending motions were overruled and dismissed without prejudice.

{¶17} Father noticed an appeal from this entry and asserts the following four assignments of error for our review:

> [1.] The trial court lacked jurisdiction to terminate the shared parenting plan making the judgment void.
>
> [2.] The trial court abused its discretion in terminating the shared parenting plan.
>
> [3.] The trial court abused its discretion when it found appellant under-employed and then imputed income.

5

[4.] The trial court abused its discretion in relating the modification back to the filing of the motion to modify.

{¶18} Father's first two assignments of error relate to the trial court's finding that there has been a "de facto" termination of the Shared Parenting Plan. Father argues the trial court was without jurisdiction to terminate the Shared Parenting Plan on its own motion, rendering the judgment void. Alternatively, Father argues the trial court abused its discretion in terminating the Shared Parenting Plan because there was no change in circumstances and the court did not undertake a best interest analysis with regard to the children.

{¶19} Mother responds that the trial court had jurisdiction to terminate the Shared Parenting Plan on its own motion, pursuant to R.C. 3109.04(E)(2)(c). Mother alternatively asserts that Father invoked the trial court's jurisdiction to terminate the Shared Parenting Plan when he filed his Motion for Reallocation of Parental Rights and Responsibilities on July 21, 2014.

{¶20} We find both parties' arguments without merit, as they are based on a false premise. The trial court did not terminate the Shared Parenting Plan. It merely observed the following: "At one time the children were subject to a Shared Parenting Plan. The Defendant then moved to Florida, which resulted in a de facto termination of the Shared Parenting Plan." This observation of the trial court did not, however, effectively terminate the Shared Parenting Plan. There is, in fact, no order that demonstrably terminated the Shared Parenting Plan. In support of our determination that it was not the trial court's intention to terminate the Shared Parenting Plan, we note the Child Support Computation Worksheet attached to the trial court's order indicates it is a Shared Parenting Order

6

worksheet. Further, if the trial court had terminated the parties' Shared Parenting Plan, it would have issued a modified decree for the allocation of parental rights and responsibilities for the care of the children, pursuant to R.C. 3109.04(E)(2)(d). It did not do so. Finally, in order to terminate the parties' Shared Parenting Plan upon its own motion, the trial court was required to find that shared parenting is not in the best interest of the children. *See Larbig v. Larbig*, 11th Dist. Ashtabula No. 2016-A-0070, 2017-Ohio-7288, ¶14, citing R.C. 3109.04(F)(1). No such finding was made.

**{¶21}** Accordingly, Father's first and second assignments of error are without merit.

**{¶22}** The remaining two assignments of error relate to the trial court's modification of child support. In his third assignment of error, Father argues the trial court abused its discretion by imputing income to him in the absence of any evidence establishing he is voluntarily underemployed.

**{¶23}** At the time of the trial court's order, R.C. 3119.02 provided, in pertinent part:

> In any action in which a court child support order is issued or modified, [or] in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order, * * * the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code. The court * * * shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. * * *

**{¶24}** To calculate the amount of child support owed, the trial court must first determine the annual income of each parent. "Income" in a child support case is defined as either of the following: "(a) For a parent who is employed to full capacity, the gross

7

income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(9) (formerly (C)(5)). When a trial court determines a parent "is voluntarily unemployed or voluntarily underemployed," "potential income" includes "imputed income." R.C. 3119.01(C)(17)(a) (formerly (C)(11)(a)).

{¶25} The income to be imputed by the trial court is the income the voluntarily unemployed or underemployed parent would have earned if fully employed, as determined by the factors listed in R.C. 3119.01(C)(17)(a)(i)–(xi). Those factors include the parent's prior employment experience; education; physical and mental disabilities, if any; the availability of employment and the prevailing wage and salary levels in the geographic area in which the parent resides; special skills and training; whether there is evidence that the parent has the ability to earn the imputed income; the age and special needs of the child; the parent's increased earning capacity because of experience; the parent's decreased earning capacity due to a felony conviction; and any other relevant factor. R.C. 3119.01(C)(17)(a) (formerly (C)(11)(a)). *See Hammonds v. Eggett*, 11th Dist. Geauga No. 2010-G-2980, 2011-Ohio-6510, ¶17.

> Nothing in the statute requires proof that an obligor intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability. The primary design and purpose of [the statute] are to protect and ensure the best interests of children. The parent's subjective motivations for being *voluntarily* unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation.

*Rock v. Cabral*, 67 Ohio St.3d 108, 111 (1993) (emphasis sic) (footnote and internal citation omitted) (referring to the analogous provisions found in former R.C. 3113.215).

8

{¶26} "Thus, the potential income to be imputed to a voluntarily unemployed or underemployed parent is based upon the amount the parent would have earned if he or she had been fully employed. The imputed amount of income, in turn, is determined" by applying R.C. 3119.01(C)(17)(a). *Fields v. Fields*, 11th Dist. Ashtabula No. 97-A-0073, 1998 WL 964543, *4 (Dec. 31, 1998) (applying former R.C. 3113.215).

{¶27} "Whether a parent is 'voluntarily underemployed' within the meaning of [the statute], and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock*, *supra*, at syllabus. Thus, absent an abuse of discretion, the trial court's determinations in this regard will not be disturbed on appeal. *Id.* at 112, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989).

{¶28} The trial court found that Father "works as a subcontracting concrete finisher on a seasonal basis and voluntarily elects to remain underemployed." The trial court found that Father's *actual income* for 2017, the year prior to the evidentiary hearing, was $47,824.00:

> Based upon [Father's] testimony, using figures most favorable to [Father], [Father's] income was $6,800 for the first three months of 2017, $20,512 for the last four and a half months of the year, and one could extrapolate that his income from April to August is the same as the last four and a half months of the year, $20,512. This would result in annual income of $47,824.

{¶29} The trial court then determined Father's annual *potential income* is $54,154.30. In making this determination, the trial court made the following findings:

> [Mother] believes the most accurate calculation of [Father's] income is to differentiate between his regular season and off-season income. [Father] has proven that he is completely capable of working in the off-season and, based upon his earnings from January to March of 2018, he is fully capable of earning $2,266.67 per month in the off-

9

season ($6,800 for 3 months). At $25 per hour, this is only about 90 hours a month (i.e., working less than half of each month). Similarly, based upon 2017, [Father] is capable of earning $5,860.57 in the busy months (the three and a half months from mid-August through November of 2017). Therefore, [Father's] annual income would be calculated by treating January through half of April as off-season, half of April through November as regular season, and December as off-season. This results in an annual projected income of $2,266.67 (January) plus $2,266.67 (February) plus $2,266.67 (March) plus $1,133.34 (first half of April) plus $2,930.29 (second half of April) plus $5,860.57 (May) plus $5,860.57 (June) plus $5,860.57 (July) plus $5,860.57 (August) plus $5,860.57 (September) plus $5,860.57 (October) plus $5,860.57 (November) plus $2,266.67 (December) equaling $54,154.30.

{¶30} Finally, the trial court imputed the entire amount of potential income to Father: "It is hereby ordered, adjudged and decreed that the income to be imputed to the Defendant is $54,154.30."

{¶31} The trial court did not reference what facts and circumstances it relied on in finding Father voluntarily underemployed. Nevertheless, based on Father's testimony at the evidentiary hearing, we conclude the trial court did not abuse its discretion in making this finding. For instance, Father testified that he was not disabled or injured, he was able to feed his three children on only $50-$60 for the three days he used to have them each week, and he was overqualified for some jobs (e.g., McDonald's) that may be available to him during the "off-season" of his usual concrete-related employment.

{¶32} The trial court did not, however, reference any factors in R.C. 3119.01(C)(17)(a), or any other relevant fact or circumstance, in support of its conclusion that $54,154.30 should be imputed to Father for child support purposes.

{¶33} "Courts have consistently held that consideration of these factors is a necessary requirement to imputing income, even after a determination that the parent's unemployed or underemployed status is voluntary." *Marek v. Marek*, 9th Dist. Summit

No. 21886, 2004-Ohio-5556, ¶19 (citations omitted); *see also Misra v. Mishra*, 10th Dist. Franklin No. 17AP-306, 2018-Ohio-5139, ¶18, citing *Meeks v. Meeks,* 10th Dist. Franklin No. 05AP-315, 2006-Ohio-642, ¶37 ("when imputing income to a parent, the trial court *must* consider the enumerated factors") (emphasis added).

**{¶34}** Accordingly, we conclude that imputing income for the purpose of calculating Father's child support obligation, without any indication on the record that the court considered and followed the statutory guidelines, was an abuse of discretion. *See Marek*, *supra*, at ¶24. This matter must be remanded for the trial court to revisit the issue of imputing income to Father, in compliance with R.C. 3119.01(C)(17)(a).

**{¶35}** Father's third assignment of error has merit to the extent indicated.

**{¶36}** In his final assignment of error, Father argues the trial court erred in relating the child support modification back to September 1, 2015. Mother has not responded to this assignment of error.

**{¶37}** "'Whether to make a modification of support retroactive to the date of the motion is a question left to the sound discretion of the trial court.'" *Nichols v. Nichols*, 10th Dist. Franklin No. 13AP-13, 2013-Ohio-3927, ¶20, quoting *Lightle v. Lightle*, 2d Dist. Champaign No. 2012 CA 8, 2012-Ohio-3284, ¶8. "While it may 'often be equitable to apply a modification retroactively to the date of the motion, * * * a substantial arrearage or overage created by a retroactive modification can create a hardship to one of the parties.'" *Id.*, quoting *Lightle.*

**{¶38}** "The general rule in Ohio is that when a court modifies a child support award, that modification is made retroactive to the date on which the motion to modify the award is made." *Zamos v. Zamos*, 11th Dist. Portage No. 2002-P-0085, 2004-Ohio-2310,

11

¶13 (citations omitted). "The general rule is based on equitable principles in recognition of 'the substantial time it frequently takes to dispose of motions to modify child support obligations.'" *Id.*, quoting *Hamilton v. Hamilton*, 107 Ohio App.3d 132, 139-140 (6th Dist.1995). "'[A]bsent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested.'" *Id.*, quoting *State ex rel. Draiss v. Draiss*, 70 Ohio App.3d 418, 421 (9th Dist.1990); *see also Sandel v. Choma*, 9th Dist. Summit No. 25995, 2012-Ohio-3781, ¶5 (characterizing the rule as a "presumption of retroactivity" that may be "overcome" by facts in the record that demonstrate "special circumstances").

{¶39} Here, we do not find that the trial court abused its discretion in ordering the modification of child support retroactive to when Mother first requested the modification. Father has not directed us to facts in the record demonstrating special circumstances that overcome the presumption of retroactivity.

{¶40} Father's fourth assignment of error is without merit.

{¶41} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This matter is remanded to the trial court to clarify that it has considered the statutory factors and engaged in an imputed income analysis based on those factors with regard to the modification of child support.

THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

12